Dr. Nui Loa PRICE, aka Maui Loa, individually and in his capacity as chief of the Hou Hawaiians; The Hou Hawaiians, a Native Hawaiian Ohana; and Kamuela Price, individually, and in his capacity as member of the elder council of the Hou Hawaiians, Plaintiffs–Appellants,

v.

STATE OF HAWAII, William W. Paty, individually and as Chairman of the Board of Land and Natural Resources of the State of Hawaii; Herbert K. Apaka, Jr.; Moses W. Kealoha; J. Douglas Ing; John Arisumi; Herbert Arata, individually and as Members of the Board of Land and Natural Resources of the State of Hawaii; John Waihee,

---

individually and as Governor of the State of Hawaii; The Honolulu Sailors Home Society, a Hawaii non-profit corporation; HFSL Corp., a Hawaii corporation, dba Harbor Associates; Peter S. Smith, dba Smith Development Corp.; Glenn K. Okada, dba G.K.O. Corp.; and HonFed Bank, a federal savings bank, Defendants–Appellees.

Nos. 90–15117, 90–15863.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1991.

Decided July 11, 1991.

As Amended on Denial of
Rehearing Aug. 8, 1991.

As Amended Sept. 18, 1991.

James Weinstein and Randall Udelman, Arizona State University of Law, Tempe, Ariz., for plaintiff-appellant Kamuela Price,

and Walter R. Schoettle, Honolulu, Hawaii, for plaintiffs-appellants Nui Loa Price and the Hou Hawaiians.

Steven S. Michaels and Randall Y.K. Young, Deputy Attys. Gen., Honolulu, Hawaii, for defendants-appellees State of Hawaii and Hawaii officials, Keith J. Steiner, Honolulu, Hawaii, for defendant-appellee Honolulu Sailors Home Soc., Philip J. Leas, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for defendants-appellees HFSL Corp., Peter S. Smith and Glenn K. Okada, and John P. Moon and Lissa H. Andrews, Honolulu, Hawaii, for defendant-appellee HonFed Bank.

Before BEEZER, NOONAN and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Once again we visit the scene of the ongoing contest which pits Dr. Nui Loa Price, Kamuela Price and the Hou Hawaiians (appellants) against the State of Hawaii (the State) and a number of its officials.[1] This visit we find a pitched battle into which a number of private parties have also been drawn. Those parties are the Honolulu Sailors Home Society (HSHS), HFSL Corporation, dba Harbor Associates, Peter S. Smith, dba Smith Development Corp., Glenn K. Okada, dba G.K.O. Corporation, and HonFed Bank. We will sometimes refer to all of this group as the "private appellees." Appellants claim that a certain parcel of land in which the private appellees purportedly have an interest is, in fact, owned by the State and is subject to the public trust which was created at the time that the State was admitted to the Union. Based upon the facts pled and otherwise before us in this action, we disagree and we affirm the district court's dismissal of the action as to all defendants other than the state officials.

---

1. Those officials are: William W. Paty, Herbert K. Apaka, Jr., Moses K. Kealoha, J. Douglas Ing, John Arisumi, Herbert Arata and John Waihee.

They are hereafter referred to as "the state officials."

## PROCEDURAL POSTURE AND BACKGROUND FACTS

In 1893 the Provisional Government of the Hawaiian Islands granted a parcel of land to HSHS (the lot). The grant provided that the lot "shall be used only for the purposes and uses of a Sailors Home ... equally available to the sailors of all nations...." It went on to provide that if the "described lot or any part thereof shall at any time cease to be used for the purposes of a Sailors Home, the whole of said lot shall forthwith revert to the Government of the Hawaiian Islands."

HSHS took possession of the lot and commenced using it for a sailors home. Unfortunately, as is so often true when perpetual restrictions are imposed upon the uses of land, changes in the uses of surrounding properties made the restriction outdated, onerous and lacking in economic sense. The lot is in the heart of Honolulu's downtown business district.

HSHS, however, did not simply violate the restrictions and abide the consequences. Rather, it commenced legal proceedings in which it asked the courts of Hawaii to approve certain plans in advance. Those plans would, in the opinion of HSHS, make use of the lot in a way that carried out the intent of the grantor, even though the uses may not, at first blush, have appeared to have been within the specific terms of the grant itself. HSHS resorted to the courts on three separate occasions, but only the last resort is the subject of this case.

In 1969, HSHS filed an action in which the State was made a party. The Attorney General of the State appeared and represented its interests. At that time, the Circuit Court of the First Judicial Circuit of the State of Hawaii determined that the lot itself was not going to be the physical location of a sailors home, but that its use in combination with other adjacent property would "constitute an actual physical use of a substantial portion of the premises for sailors." Moreover, said the court, this would be a "fair, just and reasonable" arrangement. *See* Findings of Fact and Conclusions of Law in *In re the Honolulu Sailors' Home Society,* CV No. 28078 (July 14, 1969). *See also* the judgment of even date. In other words, the court placed its imprimatur upon the contemplated transaction.

Appellants were not pleased with the fact that, in effect, no sailors' home was actually to be located on the lot itself. Thus, in 1989, appellants commenced this action for the purpose of having the private appellees ejected from the lot and of having the State commence receiving any income which the lot then produced. The reason that what appears to be a local dispute over property rights is before the federal courts is to be found in section 5(f) of the Hawaii Admissions Act. Pub.L. 86–3, § 5(f), 73 Stat. 4 (1959) (the Act). As pertinent here, section 5(f) reads as follows, and we have emphasized the part most pertinent to our discussion:

> The *lands* ... together with the proceeds from the sale or other disposition of any such *lands* and the income therefrom, shall be held by said State as a public trust for the support of the public schools and other public educational institutions, for the betterment of the conditions of native Hawaiians ..., for the development of farm and home ownership on as widespread a basis as possible for the making of public improvements, and for the provision of lands for public use. *Such lands, proceeds and income shall be managed and disposed of for one or more of the foregoing purposes in such manner as the constitution and laws of said State may provide and their use for any other object shall constitute a breach of trust for which suit may be brought by the United States.*

Appellants assert that since the rights of the Provisional Government in the lot passed to the United States and thence to the State upon its admission to the Union, those rights are subject to the provisions of section 5(f) of the Act. That being so, say the appellants, the State through the inaction of its officials has allowed an improper diversion of revenues that should have come into the State's hands and been used for section 5(f) purposes.

This is not the first time that appellants have accused the State and its officials of violating the trust imposed upon the land which was ceded to the State under the terms of the Act. *See Price v. Akaka,* 928 F.2d 824 (9th Cir.1991) (superseding 915 F.2d 469 (9th Cir.1990)) (*Akaka*); *Price v. State of Hawaii,* 921 F.2d 950 (9th Cir. 1990) (*Price II*); *Price v. State of Hawaii,* 764 F.2d 623 (9th Cir.1985), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986) (*Price I*). In each of those cases, as well as others hereinafter noted, we were required to explore the interface between state and federal law which was created upon the passage of the Act. We must now do so again, although, as will appear, many of the issues before us have already been decided in our prior visitations to this area.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983. We have jurisdiction pursuant to 28 U.S.C. § 1291.

■ We review the grant of summary judgment and the grant of a motion to dismiss de novo. *Price II,* 921 F.2d at 954. Issues of eleventh amendment and qualified immunity are also reviewed de novo. *Id.* Questions of immunity which arise from facts not in dispute also present issues of law. *Id.*

■ We review the district court's award of fees under Rule 11 for an abuse of discretion. *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1365–66 (9th Cir. 1991) (en banc) (superseding 914 F.2d 1136, 1143 (9th Cir.1990) (en banc)). Attorneys fees awards under 42 U.S.C. § 1988 are also reviewed for abuse of discretion. *Barry v. Fowler,* 902 F.2d 770, 773 (9th Cir. 1990).

## DISCUSSION

A. *Standing.*

At the outset, we are met by the State's assertion that appellants lack standing. This issue can be quickly disposed of. We have previously made it clear that persons in the position of these appellants do have standing to challenge the use of section 5(f) lands. *See Akaka,* 928 F.2d at 826–27; *Ulaleo v. Paty,* 902 F.2d 1395, 1397 (9th Cir.1990); *Price I,* 764 F.2d at 630. As we have said, although section 5(f) itself does not provide a private right of action, an action under 42 U.S.C. § 1983 is proper. *Ulaleo,* 902 F.2d at 1397; *Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n,* 739 F.2d 1467, 1470–71 (9th Cir.1984) (Keaukaha II).

B. *Immunity; Dismissal of the State and the State Officials.*

(1) The State.

■ Appellants have, once again, attempted to sue the State. As we said in *Price II,* 921 F.2d at 958: "It is pellucid that they cannot, for the eleventh amendment prohibits it." Thus, the district court properly dismissed the action against the State itself.

(2) State Officers in their Official Capacity.

The complaint seeks retrospective relief against the state officials. It seeks no prospective relief against them. To the extent that it is intended to be an action against them in their official capacities, it is likewise barred by the eleventh amendment, and the district court's dismissal was proper. *See Ulaleo,* 902 F.2d at 1398–1400.

(3) State Officers in their Individual Capacities.

■ There can be little doubt that appellants could bring their action under section 1983 against the state officials in their individual capacities, even if those officials were performing their governmental duties when they committed the alleged wrongs. *Akaka,* 928 F.2d at 828. The district court's determination to the contrary was in error.

However, the state officials argue that the facts which appear on this record make it clear that they are entitled to qualified immunity. There can be no doubt that

their activities or lack of activities regarding the lot in question were discretionary functions. As we said in *Price II*, 921 F.2d at 958: "[O]fficials performing discretionary functions, as were these officials, are entitled to qualified immunity if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)." However, the issue was not raised in the motion before the district court, although it was raised in the state officials' answer.

■ We recognize that in order to avoid a qualified immunity claim the appellants must show that the law supporting the following chain of reasoning was clearly established, *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738: that the State's interest was an interest in land,[2] that the land reverted to the State when the 1969 transaction was consummated,[3] and that the failure to collect revenues from the land since that time resulted in a violation of section 5(f) of the Act,[4] all of which leads to liability of the state officials under section 1983.

While we have serious doubts that the plaintiffs can overcome the difficulties involved in showing that, objectively speaking, the officials violated clearly established legal principles, immunity is an issue that should first be addressed by the trial court. *See, id.* at 819–20, 102 S.Ct. at 2739.[5]

### C. *Color of State Law; Dismissal of the Private Appellees.*

■ Appellants joined HSHS and the other private appellees in this section 1983 action,[6] but the complaint alleged no facts to support the claim that the private appellees were acting under color of state law. On the contrary, the allegations of the complaint make it clear that HSHS is the owner in fee simple of the lot, subject to the use limitations and reversionary interest of the State which we have already described. Nothing in the complaint suggests that the private appellees have done anything that any other holder of fee title to land would not have done, except, of course, the seeking of court approval before taking actions that might have possibly caused divestment of the property. None of this contains a whisper of a suggestion that these appellees have acted with the State in any sense whatever.

We recognize that this case was dismissed at the pleading stage pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We also recognize that there is great liberality in federal pleading. *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Trixler Brokerage Co. v. Ralston Purina Co.*, 505 F.2d 1045, 1050 (9th Cir.1974). However, private parties are not generally acting un-

2. Whether the right held by the State is an interest in land within the meaning of section 5(f) of the Act, rather than mere "public property" referred to in section 5(b) is a matter subject to debate, although our recent decision in *Napeahi v. Paty*, 921 F.2d 897 (9th Cir.1990) strongly suggests that it is the former.

3. Whether the grant in question is, under the law of Hawaii, a fee simple determinable or a fee simple subject to a condition subsequent is not, as far as we have been able to ascertain, entirely clear. *Compare* Restatement of Property § 23 (1936) *with* Restatement of Property § 24 (1936). If the former, the property would revert automatically; if the latter, the State would have to take action to enforce the condition and recover the property. *See* Restatement of Property, Introductory Note to Chapter 4 (1936).

4. Anyone who reviewed the situation would immediately discover that the 1969 transaction was expressly approved by the circuit court when it issued its decree on July 14, 1969. As we have already pointed out, that was a proceeding to which the State was a party. The proposition that the law clearly required state officials to attempt to oust HSHS and the other private appellees from the lot in the face of that state court decree is problematic to say the least.

5. For the same reason, we decline to consider the state officials' claim that the action is barred by the statute of limitations.

6. Of course, appellants have no direct cause of action under section 5(f). *Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n*, 588 F.2d 1216, 1220–24 (9th Cir.1978), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).

der color of state law, and we have stated that " '[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.' " *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 649 (9th Cir. 1984) (citation omitted). This is appropriate for, as the Supreme Court has said:

> Careful adherence to the "state action" requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed. A major consequence is to require the courts to respect the limits of their own power as directed against state governments and private interests.

*Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 936–37, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).

Of course, the determination is usually "fact bound", and that militates against too hasty a termination of an action. *Id.* at 939, 102 S.Ct. at 2755. Nevertheless, a defendant is entitled to more than the bald legal conclusion that there was action under color of state law. The Supreme Court has "insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Id.* at 937, 102 S.Ct. at 2753. In deciding whether action is attributable to the State, a two-part test is applied:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state

actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* at 937, 102 S.Ct. at 2753–54.

Appellants suggest nothing which indicates that the actions of the private appellees were in any way imposed by the State or that they exercised some right granted by the State, except to the extent that they sought state court approval of their 1969 plan before going ahead with it. But appellants do not allege that seeking court approval constituted state action, and, of course, "merely resorting to the courts ... does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980).[7]

■ A person may become a state actor by conspiring with a state official, *id.,* or by engaging in joint activity with state officials, *Sable Communications v. Pacific Tel. & Tel. Co.,* 890 F.2d 184, 189 (9th Cir.1989) (defendant sought the aid of law enforcement officials in order to use further procedures that would violate the plaintiff's first amendment rights). A person may also become a state actor by becoming so closely related to the State that the person's actions can be said to be those of the State itself. That might be found because the nexus is so close as to cause the relationship to be symbiotic. *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961); *Vincent v. Trend Western Technical Corp.,* 828 F.2d 563, 569 (9th Cir.1987). It might also be for such other reasons as performing public functions or being regu-

---

7. *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), is not to the contrary. There the state courts were used to enforce an egregious form of racial segregation, and the wrong was uniquely aggravated by court action. *Cf., Edmonson v. Leesville Concrete Co., Inc.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), where the Court held that racially based peremptory challenges in civil cases involved the court system in malignant discrimination in the courtroom itself. Here, however, the state court was dealing with a relatively simple real property and trust issue which had no facinorous overtones whatever. At any rate, if the seeking of state court approval were the wrong in question, that occurred in 1969 and the statute of limitations has long since run. Haw. Rev.L. § 657–7. *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).

lated to the point that the conduct in question is practically compelled by the State. *Vincent,* 828 F.2d at 568–69.

■ None of these forms of connection between the State and the private appellees is pled here, nor are any of them hinted at. On the contrary, HSHS received a grant of property and has treated that property as its own for almost one hundred years. In other words, since there was no sufficient pleading that the private appellees were acting under color of state law, the district court properly dismissed the action as to them.[8]

### D. *Award of Attorneys Fees to HSHS.*

(1) District Court Award.

■ The district court awarded HSHS fees against appellants and their counsel, Walter R. Schoettle. It did so based upon Fed.R.Civ.P. 11, and 42 U.S.C. § 1988.

In making that award, the district court found that there was simply no factual basis for the claim that HSHS was acting under color of state law. The court was also impressed with the fact that HSHS had repeatedly asked for a dismissal without prejudice, and had made appellant aware of the legal and factual positions of HSHS. In addition, it appeared that the parties had orally agreed upon a dismissal without prejudice, but that appellants' counsel refused to sign a written agreement. Moreover, appellants and their counsel failed to appear to contest the requested fee award.

The district court thus determined that the action was "frivolous, groundless and unreasonable." Before an award of fees against the plaintiff may be made under section 1988, the action must be meritless and without foundation. *Hughes v. Rowe,*

449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980). That is precisely what the district court found here.

Rule 11 provides a different standard. Under Rule 11 an award is required if a paper which is frivolous is filed. *See Townsend v. Holman Consulting Corp.,* 929 F.2d at 1362. Here the district court found that the filing of the complaint against HSHS was, indeed, frivolous.

We recognize that the state action concept can be murky at its depths,[9] but when one is as close to its surface as we are in this case the concept has much greater clarity. Here, because the complaint so patently failed to state a claim against HSHS under section 1983 and because appellants and their counsel eschewed the opportunity to appear before the district court and disabuse it of its idea that the claim was entirely baseless, we are unable to say that the court abused its discretion when it awarded fees grounded upon both section 1988 and Rule 11. We, therefore, affirm its decision regarding fees.

(2) Fees on Appeal.

■ We, too, have the discretion to award fees on appeal when the appeal itself is frivolous. *See* 42 U.S.C. § 1988. Particularly in light of the district court's decision, we have given close attention to the request here, and to the arguments, some of them new, which appellants have suggested to us.

While we have not adopted appellants' arguments regarding the private appellees, we are not convinced that the appeal itself is frivolous. Beyond that, we have been subjected to arguments by the appellees in this case—arguments adopted by HSHS and the other private appellees—on issues which, themselves, have previously been

---

**8.** Appellants, in passing, seem to suggest that pendent party jurisdiction would allow them to hold HSHS and the other private defendants in this action. Pendent party jurisdiction is not available. *See Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). *See*

also *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

**9.** *See Edmonson v. Leesville Concrete Co., Inc.,* — U.S. —, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

settled by us. *See,* for example, Part A of this Opinion regarding standing. Appellees have even suggested that there is no section 1983 action available regarding failure to follow section 5(f) of the Act. Again, the contrary has long since been settled by us. *See Price II,* 921 F.2d at 956; *Akaka,* 928 F.2d at 827–28; *Ulaleo,* 902 F.2d at 1397; *Keaukaha II,* 739 F.2d at 1470–71.

Accordingly, we will not exercise our discretion to award attorneys fees to any of the parties in this case.[10]

### CONCLUSION

Appellants have once again presented claims that the State of Hawaii and its officials have failed to carry out their solemn duties under the Hawaii Admissions Act. Their claims against the State have spent themselves upon a revetment built of immunity principles. Their claims against the private appellees have fallen far short of meeting the requirement that those parties must have acted under color of state law. However, they may continue to pursue their damage claims against the state officials at this time.

We have previously said that these appellants can call the responsible parties to account when section 5(f) of the Act is violated. *Price II,* 921 F.2d at 959. However, in order to do so appellants must, like everyone else, bring the right claims against the right individuals. Here the combination of a failure to seek prospective relief against the state officials and a temerarious attack on private individuals, who were merely using land which had been deeded to them, has brought the greater part of appellants' action to nought. The success or failure of the remainder awaits the skirmishes of another day.

10. This is not antithetical to our determination regarding the district court's award of fees. We must exercise our own discretion when fees are requested on appeal. We deferentially review the district court's exercise of discretion when it awards fees. The standards are different. So may be the results.

AFFIRMED IN PART and REVERSED IN PART.