5 F.3d 539
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Nui Loa PRICE, Dr., a/k/a Maui Loa; the Hou Hawaiians;
Kamuela Price, Plaintiffs-Appellants
v.
STATE of HAWAII; William W. Paty, individually and as
Chairman of the Board of Land and Natural Resources of the
State of Hawaii; Herbert K. Apaka; Moses S. Kealoha; J.
Douglas Ing; John Arisumi; Herbert Y. Arata, individually
and as members of the Board of Land and Natural Resources of
the State of Hawaii; John W. Waihee, individually and as
Governor of the State of Hawaii, et al., Defendants-Appellees.
 No. 92-16211.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1993.
Decided Aug. 23, 1993.
 
 Appeal from the United States District Court for the District of Hawaii; No. CV-89-00561-HMF, Harold M. Fong, Chief Judge, Presiding.
 D.Hawaii [APPEALING AFTER REMAND FROM 939 F.2d 702.]
 AFFIRMED.
 Before GOODWIN, TANG and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 On remand from our prior decision in Price v. Hawaii, 939 F.2d 702 (9th Cir.1991) ("Price III "), cert. denied, 112 S.Ct. 1480 (1992), the district court held that the state officials were entitled to qualified immunity and denied Appellants Dr. Nui Loa Price, Kamuela Price, and the Hou Hawaiians, a native Hawaiian tribe, (collectively, "Price"), leave to amend. Price appeals. We affirm.
 
 I.
 
 3
 Price contends that a certain parcel of land ("the lot") granted to the Honolulu Sailors Home Society ("HSHS") was being used for purposes other than those specified in the land grant, and therefore, the lot reverted to the State of Hawaii. Price further contended that because Hawaii's reversionary interest in the lot is "land" within the meaning of Sec. 5(f) of the Hawaii Admission Act of 1959, Pub.L. No. 86-3, 73 Stat. 4, ("Admission Act"), "the State through the inaction of its officials has allowed an improper diversion of revenues that should have come into the State's hands and been used for section 5(f) purposes." Price III, 939 F.2d at 705. Pursuant to 42 U.S.C. Sec. 1983, Price brought an action against the state officials based on the Admission Act.[1]
 
 II.
 
 4
 For the reasons stated in Price v. Akaka, No. 92-16462 (9th Cir. submitted May 5, 1993), we find that Price has standing to bring a Sec. 1983 action based on the Admission Act.[2]
 
 III.
 
 5
 "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted).
 
 
 6
 Price argues that the state officials waived the affirmative defense of qualified immunity. This argument is meritless. The officials raised the defense of qualified immunity in their answer, although they did not raise such defense in a subsequent motion to dismiss. See Price III, 939 F.2d at 707.
 
 
 7
 Price next argues that the defense of qualified immunity does not apply here because the functions performed by the state officials were not discretionary. This argument is without merit. We previously stated that "[t]here can no doubt that [the state officials'] activities or lack of activities regarding the lot in question were discretionary functions." Id. at 706-07.
 
 
 8
 Price next attempts to overcome the difficult task of showing that the state officials violated clearly established law and therefore were not entitled to qualified immunity.[3] We previously stated:
 
 
 9
 [I]n order to avoid a qualified immunity claim [Price] must show that the law supporting the following chain of resasoning was clearly established: that the State's interest was an interest in land, that the land reverted to the State when the 1969 transaction was consummated, and that the failure to collect revenues from the land since that time resulted in a violation of section 5(f) of the Act, all of which leads to liability of the state officials under section 1983.
 
 
 10
 Id. at 707 (internal citation and footnotes omitted).
 
 
 11
 The district court determined that, at the time the state officials' allegedly improper conduct took place, there were no cases which discussed the issue of whether Hawaii's interest in the subject lot was an interest in "land" controlled by Sec. 5(f) or an interest in "other public property" as referred to in Sec. 5(b) but not in Sec. 5(f). The answer is crucial because if the subject lot does not come within the meaning of Sec. 5(f) then Price logically cannot argue that the state officials breached their fiduciary duties under the Sec. 5(f) trust, and Price thus would have no Sec. 1983 cause of action.
 
 
 12
 Under Sec. 5(b) of the Admission Act, the State of Hawaii was given title to all the "public lands" and "other public property" within the boundaries of the State of Hawaii. The Admission Act further provided under Sec. 5(f) that:
 
 
 13
 The lands granted to the State of Hawaii by subsection (b) of this section and public lands retained by the United States under subsections (c) and (d) and later conveyed to the State under subsection (e), together with the proceeds from the sale or other disposition of such lands and the income therefrom, shall be held by said State as a public trust for [five purposes].... Such lands, proceeds and income shall be managed and disposed of for one or more of the foregoing purposes in such manner as the constitution and laws of said State may provide and their use for any other object shall constitute a breach of trust for which suit may be brought by the United States.
 
 
 14
 (Emphasis added.)
 
 
 15
 The only case that Price cites for the proposition that Hawaii's reversionary interest in the lot is an interest in land within the meaning of Sec. 5(f) is Napeahi v. Paty, 921 F.2d 897 (9th Cir.1990), cert. denied, 112 S.Ct. 278 (1991). Although we noted that the Napeahi case strongly suggests that Hawaii's interest in the lot falls within Sec. 5(f), Price III, 939 F.2d at 707 n. 2, the district court correctly stated that "[e]ven if Napeahi stood for the proposition that such inchoate interests are 'lands' subject to the trust obligations of section 5(f), it was decided long after the challenged actions of the state officials." We agree that at the time the challenged actions occurred, the law was not clearly established that Hawaii's reversionary interest in the lot was "land" within the meaning of Sec. 5(f) and subject to its trust provisions. It therefore follows that the state officials did not violate clearly established law and are entitled to qualified immunity. We affirm because the district court's finding of qualified immunity on this basis alone is sufficient.
 
 IV.
 
 16
 Price finally argues that the district court abused its discretion in denying Price's motion for leave to amend. Price requested that he be allowed to amend the original complaint to: (1) allege a breach of the land grant's condition prior to 1959 and subsequent to 1969 transaction approved by the state court; (2) more specifically allege that there is state action on the part of the private defendants[4]; and (3) to seek prospective injunctive relief against the state officials in their official capacity.
 
 
 17
 The district court noted that Price's "proposed amendments are inadequate under the local rules for this district, which require any party 'filing or moving to file an amended pleading' to 'reproduce the entire pleading as amended.' " (Quoting Local Rule 120-3.) The district court nevertheless considered the proposed amendments and denied them "based upon undue delay and prejudice to all the defendants." The proposed amendments were also denied on the basis of futility.
 
 
 18
 First, Price's proposed amendments do not cure Price's original claims against the state officials in their individual capacities because even if there was a breach of the state court judgments or a breach prior to the state court judgments, the state officials, at that time, were not violating clearly established law. And the state officials would be entitled to qualified immunity.
 
 
 19
 Second, we have previously stated that "the complaint alleged no facts to support the claim that the private appellees were acting under color of state law," Price III, 939 F.2d at 707, and that "[c]onclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act," id. at 708 (quotation omitted). Price has failed to allege any new facts which suggest that the private defendants were acting as state actors.
 
 
 20
 Finally, Price alleges that "[e]ven if ... the court or jury were unable to determine that title to the subject property has reverted to the state, it is clear that Defendants are making no effort to recover properties like this one." "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law," Ulaleo v. Paty, 902 F.2d 1395, 1398-99 (9th Cir.1990) (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)), and "if the relief sought is prospective relief against a state official, i.e. injunctions, the relief is allowable," id. at 1398.
 
 
 21
 Price's proposed amendment thus seeks "injunctive relief to compel the defendants to catalog all properties which have these reversionary clauses and establish a program to monitor the use of those properties and recover them when the restrictions are violated." However, the relief sought is one which we cannot grant because "it is not for us to declare that certain methods of holding, managing, and accounting for the ceded lands and income must be followed by the State and its officials." Price v. Hawaii, 921 F.2d 950, 956 (9th Cir.1990) ("Price II ").
 
 
 22
 Price's proposed amendments were thus futile and the district court did not abuse its discretion in denying Price leave to amend.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Specific facts can be found in our prior decision in Price v. State of Hawaii, 939 F.2d 702 (9th Cir.1991) ("Price III "), cert. denied, 112 S.Ct. 1480 (1992)
 
 
 [2]
 Our decision in Price v. Akaka, No. 92-16462, was filed simultaneously with this memorandum disposition
 
 
 [3]
 Although qualified immunity is not a bar to declaratory or injunctive relief, American Fire, Theft & Collision Managers, Inc. v. Gillespie, 932 F.2d 816, 818 (9th Cir.1991), Price seeks only damages against the state officials and this qualified immunity does bar. Id
 
 
 [4]
 As stated in Price III, the private defendants are the HSHS, HFSL Corporation, Peter S. Smith, Glenn K. Okada, and HonFed Bank. 939 F.2d at 704