**Christopher I. SIMMONS,
Plaintiff–Appellant,**

v.

**SACRAMENTO COUNTY SUPERIOR COURT; Sacramento County Sheriff's Department; and R. Duane Skelton, Defendants–Appellees.**

**No. 01–16309.**

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 17, 2003.*

Filed Feb. 10, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Christopher I. Simmons, Soledad, CA, plaintiff-appellant pro se.

No appearance for defendants-appellees.

Before HUG, O'SCANNLAIN, and GRABER, Circuit Judges.

## OPINION

GRABER, Circuit Judge.

Plaintiff Christopher Simmons, a state prisoner, brings this action under 42 U.S.C. § 1983. He failed to appear for trial in a civil personal injury action that he was pursuing because, by the time that proceeding occurred, he was in the Sacramento County Jail awaiting trial on an unrelated criminal matter. A default judgment was entered against him in the civil case. Under several theories, Plaintiff contends that the entry of that judgment violated his rights under the Fifth and Fourteenth Amendments.

The district court dismissed this action for failure to state a claim. Reviewing de novo, *Hicks v. Small*, 69 F.3d 967, 969 (9th Cir.1995), we affirm.

## FACTUAL AND PROCEDURAL HISTORY [1]

In April of 1995, Plaintiff was involved in a two-car accident. The driver of the other car, Michael Mirante, ran a red light and hit Plaintiff's car. The accident caused about $500 in damage to Plaintiff's car and caused injuries to Plaintiff resulting in more than $9,000 in medical expenses. In mid–1996, Plaintiff (through counsel) filed a civil action against Mirante in Sacramento County Superior Court.

Plaintiff was arrested on December 30, 1995, for driving a stolen vehicle, possessing crack cocaine, and possessing stolen property. He was held in the Sacramento County Jail, where he stayed throughout the course of the civil proceedings pertaining to the car accident. Later, the criminal charges were expanded to include several counts of burglary. Plaintiff's criminal trial began on November 27,

---

1. Because we are reviewing a dismissal on the pleadings, we accept as true all of Plaintiff's allegations and draw all inferences in his favor. *Gompper v. VISX, Inc.,* 298 F.3d 893, 896 (9th Cir.2002).

1998, and ended on December 4, 1998, with a guilty verdict. Plaintiff remains in prison, serving a sentence of "175 years to life."

The parties in the civil action attempted to settle their dispute. Mirante offered $5,000; Plaintiff countered with a demand for $100,000. At some point, an arbitrator awarded Plaintiff $10,000. However, Plaintiff rejected that award, and the matter was scheduled for trial.

In May of 1998, Plaintiff filed a motion in state court seeking an order that would allow him to attend the civil trial in person. The presiding judge of the superior court denied that motion, stating:

> Plaintiff's Request to Appear at Trial is DENIED. Plaintiff's interests will be adequately represented by his counsel. Any testimony required from Plaintiff can be done by deposition. If the plaintiff's deposition needs to be taken, the Court will entertain a motion to continue the trial date.

On August 10, 1998, Plaintiff and his lawyer filed a "Substitution of Counsel" form with the superior court. Plaintiff's lawyer withdrew from the case, and Plaintiff was substituted as counsel for himself. The record does not reveal whether anyone asked the court to reconsider its order denying Plaintiff's request to attend the trial in view of this change in circumstances.

On September 21, 1998, Plaintiff's civil trial began. He was not present, nor was a lawyer on his behalf. Responding to a motion from Mirante's counsel, the court entered a default judgment for Mirante. Plaintiff has made several attempts, in both the Superior Court of Sacramento County and the Court of Appeal for the Third District of California, to vacate the default. None has been successful. He now seeks redress in federal court against (a) the superior court; (b) the judge who entered the default; (c) Mirante's lawyer; (d) employees in charge of docketing and records for the superior court; and (e) the Sacramento County Sheriff's Department and its employees (Sheriff) for failure to transport him to his civil trial. Plaintiff argues, among other things, that these parties conspired to deprive him of his constitutional right to access the courts, that each party singularly acted to deprive him of that right, and that Defendants violated his right to due process by failing to ensure that he could attend his civil trial.

After Plaintiff took one opportunity to amend, the district court dismissed the § 1983 action for failure to state a claim. This timely appeal followed.

## DISCUSSION

### A. *Claims Against the Sheriff*

Plaintiff does not state a claim for relief against the Sheriff under § 1983.

■ 1. In *Lewis v. Casey,* 518 U.S. 343, 354–55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court revisited its germinal opinion in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and explained the kind of injury required to state a claim of a violation of a prisoner's right of access to the courts:

> [W]e must observe that the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the *Bounds* line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, or habeas petitions. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), we extended this universe of relevant claims only slightly, to "civil rights actions"—*i.e.,* actions under 42 U.S.C. § 1983 to vindicate "basic constitutional rights." 418 U.S. at 579, 94 S.Ct. 2963. Significantly, we felt

compelled to justify even this slight extension of the right of access to the courts, stressing that "the demarcation line between civil rights actions and habeas petitions is not always clear[ ]". . . . In other words, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

(Some citations omitted.) In other words, a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim.

■ Plaintiff's civil action arose out of a car accident that took place months before his arrest. Because the action neither challenged Plaintiff's subsequent conviction nor concerned the conditions of his confinement, the Sheriff's failure to transport him for trial falls squarely within *Lewis'* described "incidental (and perfectly constitutional) consequences of . . . incarceration."

■ 2. However, Plaintiff was only a pretrial detainee at the time the Sheriff failed to transport him. Different criteria apply to restrictions placed on prisoners who are held *before* conviction. As we recently explained:

Pretrial detainees have a substantive due process right against restrictions that amount to punishment. *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Redman v. County of San Diego,* 942 F.2d 1435,

1440–41 (9th Cir.1991) (en banc). This right is violated if restrictions are "imposed for the purpose of punishment." *Bell,* 441 U.S. at 535, 99 S.Ct. 1861. There is no constitutional infringement, however, if restrictions are "but an incident of some other legitimate government purpose." *Id.* In such a circumstance, governmental restrictions are permissible. *Salerno,* 481 U.S. at 747, 107 S.Ct. 2095.

In distinguishing between a permissible restriction and impermissible punishment, we first examine whether the restriction is based upon an express intent to inflict punishment. *Id.* . . .

We next consider whether punitive intent can be inferred from the nature of the restriction. This determination will generally turn upon " 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether [the restriction] appears excessive in relation to the alternative purpose assigned [to it].' " *Bell,* 441 U.S. at 539, 99 S.Ct. 1861 (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)) (alterations in original). Put more simply, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " *Bell,* 441 U.S. at 539, 99 S.Ct. 1861.

*Valdez v. Rosenbaum,* 302 F.3d 1039, 1045–46 (9th Cir.2002).

■ Under the foregoing two-part test, Plaintiff does not state a claim that the failure to transport him to court was a punitive measure. First, he does not allege that the reason for the Sheriff's failure to transport him to his civil trial was to punish him. Instead, he alleges that the Sheriff knew about his trial date two

weeks beforehand but, nonetheless, failed to transport him on the day in question. Without more, those allegations are insufficient to establish an express intent to inflict punishment.

Second, a punitive intent cannot be inferred from the nature of the restriction—the failure to transport. An official's refusal to transport a detainee to court for a civil trial that is unrelated to the cause or conditions of the detention has a rational alternative purpose. Keeping detainees in jail, rather than transporting them to court dates unrelated to their criminal charges or conditions of confinement, serves a legitimate penological interest. In fact, it goes to the very heart of that interest—to keep detainees detained unless absolutely necessary. The restriction is not excessive in relation to that purpose.

**B. _Claims Against the Remaining Defendants_**

Settled law governs Plaintiff's claims against the remaining Defendants.

 1. Plaintiff cannot state a claim under § 1983 against the judge who entered the default, because the judge is absolutely immune for judicial acts. _Harvey v. Waldron_, 210 F.3d 1008, 1012 (9th Cir.2000). The entry of a default judgment in a pending civil case is unquestionably a judicial act.

2. Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment. _See Will v. Mich. Dep't of State Police_, 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that " 'arms of the State' for Eleventh Amendment purposes" are not liable under § 1983); _Greater L.A. Council on Deafness, Inc. v. Zolin_, 812 F.2d 1103, 1110 (9th Cir.1987) (holding that state courts are arms of the state for Eleventh Amendment purposes).

3. Plaintiff cannot sue Mirante's counsel under § 1983, because he is a lawyer in private practice who was not acting under color of state law. Plaintiff's conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process are insufficient. _See Price v. Hawaii_, 939 F.2d 702, 708 (9th Cir.1991) (requiring more than "conclusionary allegations" to consider a private party a state actor for the purposes of § 1983 (citation and internal quotation marks omitted)).

AFFIRMED.