**Kaolelo Lambert John ULALEO, on behalf of himself and others similarly situated; Pele Defense Fund, Plaintiffs–Appellants,**

**v.**

**William PATY, in his capacity as Chairman of the Board of Land and Natural Resources, State of Hawaii; Moses Kealoha; Douglas Ing; Leonard Zalopany; John Arisumi; Herbert Arata, in their capacity as members of the Board of Land and Natural Resources, Defendants–Appellees.**

No. 89–16130.

United States Court of Appeals,
Ninth Circuit.

Argued March 12, 1990.

Submitted March 19, 1990.

Decided May 4, 1990.

Yuklin Aluli, Melody K. MacKenzie, Native Hawaiian Legal Corp., Honolulu, Hawaii, Steven C. Moore, Native American Rights Fund, Boulder, Colorado, for plaintiffs-appellants.

William M. Tam (argued) and Steven S. Michaels, assisted on the brief, Deputy Attys. Gen., Honolulu, Hawaii, for defendants-appellees.

Sherry P. Broder, Honolulu, Hawaii, for amicus curiae The Office of Hawaiian Affairs.

James M. Dombroski, Petaluma, Cal., for amicus curiae Rainforest Action Network.

Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.

FARRIS, Circuit Judge:

Kaolelo Lambert John Ulaleo and the Pele Defense Fund appeal the district court's granting of William Paty's and the Board of Land and Natural Resources' motion to dismiss. We affirm.

### FACTS

When Hawaii was admitted to the Union, Congress transferred certain lands to the state that had previously been under federal control. Those transferred lands were subject to a trust as set out in the (Hawaii) Admission Act § 5(f) which reads in part:

(f) The lands granted to the State of Hawaii ..., together with the proceeds

from the sale or other disposition of any such lands and the income therefrom, shall be held by said State as a public trust [1] for the support of the public schools and other public educational institutions, [2] for the betterment of the conditions of native Hawaiians ..., [3] for the development of farm and home ownership on as widespread a basis as possible, [4] for the making of public improvements, and [5] for the provision of lands for public use. Such lands, proceeds, and income shall be managed and disposed of for one or more of the foregoing purposes in such manner as the constitution and laws of said State may provide, and their use for any other object shall constitute a breach of trust for which suit may be brought by the United States.

Pub.L. 86–3, 73 Stat. 4, March 18, 1959. In December of 1985, the Board of Land and Natural Resources exchanged approximately 27,785 acres of this "ceded [trust] land" for approximately 25,807 acres of land owned by the Campbell Estate. Plaintiffs argue that this exchange violated the conditions of the trust and that the BLNR is obligated to recover the land to the benefit of the trust beneficiaries. Plaintiffs do not argue that such an exchange is beyond the power of the BLNR but merely that this specific exchange was a breach of the trust duty. Thus, at a minimum the plaintiffs want the return of the land, to be followed by an appropriate procedure and consideration of the trust purposes before an exchange is made.

The exchange took place following a series of studies and hearings by the BLNR. The exchange was submitted to the legislature in January 1986 for review in accordance with H.R.S. § 171–50(c), which allows the legislature to disapprove the exchange. The legislature took no action and the exchange became effective on the last day of that legislative session, April 23, 1986.

The suit is brought against the members of the Board of Land and Natural Resources in their official capacity. It was filed on April 25, 1988. The plaintiffs complain that the exchange violated section 5(f) of the Admission Act by committing trust

lands to impermissible uses and by improperly valuing and appraising the land. The complaint alleged state law and state constitutional violations. Plaintiffs also raised a fourteenth amendment claim, that they were not given adequate notice and opportunity to be heard before the exchange occurred. The section 1983 claim (42 U.S.C. § 1983) is based on the alleged violation of the Admission Act § 5(f) (federal law) and the fourteenth amendment claims.

## DISCUSSION

### I. Plaintiffs can assert a section 1983 action.

In *Keaukaha–Panaewa Community Assn. v. Hawaiian Homes Commn.*, 739 F.2d 1467 (9th Cir.1984), we found that the Admission Act § 5(f), although not encompassing an implied right of action, did allow for a section 1983 action. 739 F.2d at 1470–71. The enforcement device provided by section 5(f) was not so comprehensive as to signal preclusion of a section 1983 action, based on violation of section 5(f). 739 F.2d at 1470–71; *see also Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (setting forth analysis for when enforcement limited to that allowed by the applicable statute). Ulaleo and the Pele Defense Fund thus have standing to bring suit. *See also Price v. State of Hawaii*, 764 F.2d 623, 628 (9th Cir.1985), *cert. denied*, 474 U.S. 1055, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986).

### II. Ulaleo's motion to substitute parties is denied.

█ Ulaleo died during the pendency of this appeal; his individual claims are thus moot. His counsel requests that a substitution of individual parties be allowed. As counsel recognizes, the suit was neither brought or pursued as a class action. We therefore deny the motion and allow the appeal to continue with the Pele Defense Fund as plaintiffs. *See Vun Cannon v. Breed*, 565 F.2d 1096, 1099 (9th Cir.1977) ("in the absence of a properly certified class, the representative plaintiff whose

claim has become moot is himself without a litigable grievance, and the ... persons on whose behalf he seeks to continue the litigation ... have not yet achieved jurisprudential existence"). *See also Kennerly v. United States*, 721 F.2d 1252, 1260 (9th Cir.1983) (individual with mooted claim may continue to represent class only if class certified before mootness or mootness occurs after class certification).

*III. This suit is barred by the eleventh amendment.*

  a.  Unless Congress has made an unmistakably clear statement abrogating the eleventh amendment, suits may be brought against officials for prospective but not retrospective relief.

■ The eleventh amendment[1] bars citizen suits against states, institutional arms of the state, and state officials in their official capacity when the relief sought is *retrospective* in nature, i.e. damages. *See Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Blaylock v. Schwinden*, 862 F.2d 1352 (9th Cir.1988). Two exceptions to the eleventh amendment are: 1) if the underlying statute upon which the claim is based is founded upon the fourteenth amendment, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), or 2) if Congress has by an unmistakably clear statement abrogated the eleventh amendment bar, *see Pennsylvania v. Union Gas Co.*, — U.S. —, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). Further, if the relief sought is *prospective* relief against a state official, i.e. injunctions, the relief is allowable. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Quern v. Jordan*,

440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *Shaw v. California Department of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986).

■ The important distinction between retrospective and prospective relief is based on the case of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), where a federal court enjoined the Minnesota Attorney General from enforcing a state law, as allegedly violative of the fourteenth amendment. The theory behind *Young* is that when the official acts unconstitutionally, he acts *ultra vires* and is "stripped of his official or representative character," *Young*, 209 U.S. at 160, 28 S.Ct. at 454, and of any immunity the state might have been able to provide.[2]

> *Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is "necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" Consequently, *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation.

*Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S.Ct. 2932, 2939–40, 92 L.Ed.2d 209 (1986) (citations omitted). "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of

---

**1.** The eleventh amendment provides

  The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of

another State, or by Citizens or Subjects of any Foreign State.

**2.** Any personal immunities would still apply to the extent the official was sued in his personal capacity.

that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425, 88 L.Ed.2d 371 (1985) (citations omitted). The analysis must be of the substance not the form of the relief. *See Papasan,* 478 U.S. at 279, 106 S.Ct. at 2940.

Simply asking for injunctive relief and not damages *does not* clear the path for a suit. The Supreme Court has recognized that the difference between retrospective and prospective relief "will not in many instances be that between day and night." *Edelman v. Jordan,* 415 U.S. at 667, 94 S.Ct. at 1357.

> *Edelman* did not hold ... that the Eleventh Amendment never applies unless a judgment for money payable from the state treasury is sought. It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought.... [T]he Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity. To adopt the suggested rule, limiting the strictures of the Eleventh Amendment to a suit for a money judgment, would ignore the explicit language and contradict the very words of the Amendment itself. *Edelman* did not embrace, much less imply, any such proposition.

*Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982) (footnotes omitted). *See also Papasan,* 478 U.S. at 276, 106 S.Ct. at 2939; *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984).

b. Plaintiffs seek retrospective relief and are barred by the eleventh amendment.

The plaintiffs naturally urge us to view the relief sought as prospective. They argue that the alleged trust violation is a continuing or ongoing violation but cite no support for this proposition. We reject their efforts to avoid the holding of retrospective application as defined in *Papasan*

*v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

*Papasan* also involved a state land trust. In *Papasan* the federal government gave lands to Mississippi to be used for the benefit of schools in specified areas. The State sold the land and invested the money in railroads within the state. The railroads were destroyed during the Civil War and not rebuilt, leaving no trust corpus. The state had paid money as interest on the original value of the trust to the schools, but the complaining parties thought it should be more: They sought "where the corpus is lost or converted wrongfully, continuing the payment of appropriate income indefinitely." *Papasan,* 478 U.S. at 279, 106 S.Ct. at 2940.

The Court declined to see the claim as one for an ongoing violation, but as retrospective relief in the form of money damages.

> The distinction between a continuing obligation on the part of the trustee and an ongoing liability for past breach of trust is essentially a formal distinction of the sort we rejected in *Edelman*....
>
> ... We discern no substantive difference between a not-yet-extinguished liability for a past breach of trust and the continuing obligation to meet trust responsibilities asserted by the petitioners. In both cases, the trustee is required, because of the past loss of the trust corpus, to use its own resources to take the place of the corpus or the lost income from the corpus.... It is in substance the award ... of " 'an *accrued* monetary liability.' "

*Papasan,* 478 U.S. at 280–81, 106 S.Ct. at 2941–42 (citations omitted). Although *Papasan* is at least superficially different from this case in that its trust corpus ceased to exist completely, what is important is the Supreme Court's characterization of the relief sought in the violation of a trust. The complaint is that sometime in the past, the BLNR undertook an action, the land exchange, which allegedly injured the plaintiffs by violating the trust of which the plaintiffs are beneficiaries. There is no allegation that the Board is

continuing to violate its trust duties in other ways or that it is likely to do so in the future. The immediate relief plaintiffs seek would require the state to purchase the lands from its present holder by way of cash or other land. We hold that to grant the requested relief would be a retrospective remedy, as opposed to stopping an ongoing violation of federal law. If the trust duty was violated, it happened when the BLNR executed the exchange. Plaintiffs' framing of the requested relief suggests a retrospective outlook: "Ulaleo and PDF seek remedies which would *restore* them to the position they occupied before" the challenged exchange. (Emphasis added.)

Plaintiffs' attempt at framing the desired relief as prospective is not persuasive. The Supreme Court's statement in *Papasan* that the trust violation was a past breach coupled with plaintiffs' desire to be *restored* to a prior position supports our conclusion that the district court properly barred suit because of the eleventh amendment.

V. *The plaintiffs' state based claims are barred from federal court by the eleventh amendment.*

In *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Supreme Court dismissed claims against a state psychiatric hospital alleged to be operating in violation of the Pennsylvania constitution. For a federal court to decide such state issues would offend federalism and does not further the interests of federal law, the justification for the *Ex parte Young* exception to the eleventh amendment. Thus, plaintiffs' pendent claims based on solely state law and the state constitution, are properly dismissed. The claims could be brought very appropriately in the state court, or, given the nature of the dispute and statutory language, before even the state legislature.

## CONCLUSION

We affirm the district court's dismissal of the case for lack of jurisdiction. This action is barred by the eleventh amendment. Since we dismiss for lack of jurisdiction, we do not reach plaintiffs other arguments. Plaintiffs' Second Emergency Motion for Injunction Pending Appeal is denied.

AFFIRMED.