Lambert Kalani HAN, Christina K. Aki, Samuel L. Gomes, Patrick L. Kahawaiola'a, and Harold Uhane Jim, Uhane–Hemolele, Plaintiffs,

v.

DEPARTMENT OF JUSTICE, William P. Barr, Attorney General, in his official capacity as head of the Department of Justice, United States of America; Warren Price, III, Attorney General, State of Hawaii, Hawaiian Homes Commission, Hoaliku L. Drake, in her capacity as Chairperson of the Hawaiian Homes Commission and individually, Andrew Apana, Nani Brandt, Ann Nathaniel, Dennis Kauahi, Edison Keomaka, Alvina Park, George Robertson, Walter Smith, Jr., individually and in their capacity as commissioners, Hawaiian Homes Commission; Department of Hawaiian Homes Lands, Louella O.W. Albino, Alexander R.W. Bishaw, Lorraine K. Borden, James A. Boswell, Miriam Brione, Louis Hao, Jr., Nancy Kahinu, Margaret E. Kalilkane, Evelyn K. Kanawaliwali, Emily W. Aki Swaba, Lottie Burrows, George R. Kahinu, Jr., Jon Naeole, Weymouth, Arthur Kaai, Frances Manuel, Clara K. Ku, Martha Naeole, Danny Kekahuna, Alice Demello, Sue Ann Hasegawa, John Kelly, Jane Susan Leilani Goveia, individually and in their capacity as lessees on the Hawaii Homestead Program, Defendants.

No. 92–00406 DAE.

United States District Court, D. Hawaii.

Feb. 24, 1993.

Kenneth W. Carlson, Kilauea, HI, for plaintiffs.

Thomas A. Helper, Asst., U.S. Atty's Office, Honolulu, HI, Ellen M. Athas, Environment and Natural Resources Div., Gen. Litigation Section, Washington, DC, for defendants Dept. of Justice, William P. Barr, Atty. Gen. and U.S.

Warren Price, III, Atty. Gen., HI, Steven S. Michaels, Girard D. Lau, George Kaeo, Clayton Lee Crowell, Atty. Gen.—State of HI, Robert A. Marks, Atty. Gen. of HI, Dept. of Atty. Gen., Honolulu, HI, for defendants Warren Price, III, Atty. Gen., State of HI, Hoaliku L. Drake, Hawaiian Homes Com'n, Andrew Apana, Nani Brandt, Ann Nathaniel, Dennis Kauahi, Edison Keomaka, Alvina Park, George Robertson, Walter Smith, Jr., Dept. of Hawaiian Homes Lands. Wallace S. Fujiyama, Colbert M. Matsumoto, Ward F.N. Fujimoto, Fujiyama, Duffy & Fujiyama, Honolulu, HI, for defendants Louella O.W. Albino, Alexander R.W. Bishaw, Lorraine K. Borden, James A. Boswell, Miriam Brione, Louis Hao, Jr., Nancy Kahinu, Margaret E. Kalilkane, Evelyn K. Kanawaliwali, Emily W. Aki Swaba, Lottie Burrows, George R. Kahinu, Jr., Weymouth, Arthur Kaai, Frances Manuel, Clara K. Ku, Martha Naeole, Alice Demello, Jane Susan Hasegawa, John Kelly, Jane Susan Leilani Goveia, lessees on the Hawaii Homestead Program.

## ORDER DISMISSING ACTION

DAVID ALAN EZRA, District Judge.

The court heard the following motions on February 16, 1993: the motion to dismiss of The Department of Justice, William P. Barr, Attorney General, and the United States of America ("federal defendants"); the motion for judgment on the pleadings or, in the alternative, for summary judgment of Warren Price III, Attorney General, the State of Hawaii, the Hawaiian Homes Commission, the Chairperson and members of the Hawaiian Homes Commission, and the Department of Hawaiian Home Lands ("state defendants"); the motion to dismiss or, in the alternative, for summary judgment (filed December 8, 1992) of the individual lessees in the Hawaiian Homestead Program[1] ("lessee defendants"); the lessee defendants' motion to dismiss or, in the alternative, for summary judgment (lack of subject matter jurisdiction, res judicata, and/or collateral estoppel); and the lessee defendants' motion to dismiss or, in the alternative, for a stay of proceedings.

Kenneth W. Carlson, Esq. appeared on behalf of the plaintiffs; Thomas Helper, Assistant United States Attorney, appeared on behalf of the federal defendants; Girard D. Lau, Deputy Attorney General, appeared on behalf of the state defendants; and Ward F.N. Fujimoto, Esq. appeared on behalf of the lessee defendants.

After reviewing the motions and the supporting and opposing memoranda, the court grants the federal defendants' motion to dismiss, grants the state defendants' motion for summary judgment, and grants the lessee defendants' motion to dismiss.

## BACKGROUND

In 1921, Congress enacted the Hawaiian Homes Commission Act ("Commission Act"), Pub.L. No. 67-34, 42 Stat. 108 (1921), which set aside over 200,000 acres of land (the Hawaiian home lands) to be used for the welfare and rehabilitation of native Hawaiians. The Commission Act created the Hawaiian Homes Commission ("Commission"),

---

1. In plaintiffs' First Amended Complaint, several of the lessees were incorrectly identified. Additionally, Margaret E. Kalilikane (incorrectly identified as "Margaret E. Kalilkane") is deceased and is thus not a proper party to this case. Finally, the attorney for the lessees represented that at least two of the named lessees were never served and, thus, also are not parties to this action. As will be discussed more fully below, the court finds the First Amended Complaint fails to state a claim against the Homestead program lessees and, therefore, will not address these additional defects with the complaint.

which was given the power to lease the home lands to native Hawaiians at nominal rates as part of the Hawaiian Homestead program.

When Congress admitted Hawaii into the Union in 1959, the United States conveyed title to the Hawaiian home lands to the State of Hawaii and transferred responsibility for the administration of the home lands to the state. *See* Hawaii Admission Act ("Admission Act"), Pub.L. No. 86–3, §§ 4, 5(b), 73 Stat. 4, 5 (1959). Under the Admission Act, these public lands were to be held by the state "as a public trust for ... the betterment of the conditions of native Hawaiians, as defined in the Hawaiian Homes Commission Act, 1920, as amended." *Id.* § 5(f). Use of the home lands for "any other object shall constitute a breach of trust for which suit may be brought by the United States." *Id.*

In accordance with § 4 of the Admission Act, the State of Hawaii adopted the Commission Act as a provision of the state constitution. Haw. Const. art. XII. The express terms of the Admission Act prohibit "the encumbrances authorized to be placed on Hawaiian home lands by officers other than those charged with the administration of the Act" from being increased and "the qualifications of lessees" from being changed without the consent of the United States. *Id.* § 4.

Numerous lessees of Hawaiian home lands, the lessee defendants, have entered into third-party agreements ("TPAs") with non-native Hawaiians for the commercial farming or grazing of their lands. The Commission reviewed and approved the TPAs. Plaintiffs, including lessees of Hawaiian home lands, applicants for Hawaiian home lands, and a native Hawaiian advocacy organization, filed the instant action to challenge the TPAs.

The defendants fall into three general categories. First, plaintiffs claim the native Hawaiian lessee defendants violated the Commission Act, as well as plaintiffs' rights under 42 U.S.C. § 1983, by subleasing Hawaiian home lands to non-native Hawaiians. Complaint at ¶¶ 4(i), 11, 20. Second, plaintiffs allege the state defendants have violated the Commission Act, breached their trust responsibilities under the Admission Act, and deprived plaintiffs of their rights in violation of 42 U.S.C. § 1983 by approving the TPAs.

Complaint at ¶¶ 19–22. Third, plaintiffs allege the federal defendants have a trust and/or a fiduciary duty to the native Hawaiian population to enforce the Commission and Admission Acts which they breached by failing to bring an action to stop the TPAs. Complaint ¶¶ 13–15, 19.

## STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed unless it appears to a certainty that plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Fidelity Fin. Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987); *Stender v. Lucky Stores, Inc.,* 766 F.Supp. 830, 831 (N.D.Cal.1991). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Stender,* 766 F.Supp. at 831.

Rule 12(c) of the Federal Rules of Civil Procedure provides in part as follows:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings....

A dismissal on the pleadings is proper only if the moving party is clearly entitled to prevail. *Doleman v. Meiji Mutual Life Ins. Co.,* 727 F.2d 1480, 1482 (9th Cir.1984). All allegations of fact of the opposing party are accepted as true. *Id.* Generally, the court is unwilling to grant dismissal pursuant to Rule 12(c) "unless the movant clearly establishes that he is entitled to judgment as a matter of law." *Id.* (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 1368).

If "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b), (c). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no

genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* 477 U.S. at 322, 106 S.Ct. at 2552.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citation omitted).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

### I. FEDERAL DEFENDANTS' MOTION TO DISMISS

■ Plaintiffs allege that the federal defendants owe a trust duty to native Hawaiians and, thus, should be mandated to file an enforcement action under § 5(f) of the Admission Act against the state defendants for allowing the home lands to be used for purposes other than the betterment of native Hawaiians. Plaintiffs' allegations fail to state a cause of action in accordance with the law of this circuit. Accordingly, the court must grant the federal defendants' motion to dismiss.[2]

First, as a matter of law, the federal defendants have no trust responsibility to plaintiffs or other native Hawaiians under statutory or case law. The Ninth Circuit Court of Appeals has expressly held that "the state is the trustee.... The United States has only a somewhat tangential supervisory role under the Admission [Statehood] Act, rather than the role of trustee." *Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n,* 588 F.2d 1216, 1224 n. 7 (9th Cir. 1978), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979) (*"Keaukaha I"*). The Ninth Circuit reaffirmed that holding in *Price v. Hawaii,* 764 F.2d 623, 631 (9th Cir. 1985) (*"Price I"*) (the United States "is not a formal trustee" of the Hawaiian home lands), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986).

■ Furthermore, nothing in the statutes at issue here indicates the federal defendants have a trust duty. The Admission Act specifically requires the State of Hawaii to hold the home lands "as a public trust for the ... betterment of the conditions of native Hawaiians." Admission Act § 5(f). There is no such corresponding duty on the part of the United States. Similarly, Section 4 merely establishes a compact between the State of Hawaii and the United States, whereby the State has agreed not to amend any of the Commission Act's substantive provisions without the consent of the United States. Admission Act § 4. This creates an obligation of the state, not the federal government. And, while the federal government may bring an enforcement action, it is not by law required to.

■ Second, there is no legal right to mandamus in this action, because enforce-

**2.** The question before the court today is not whether the United States has a moral obligation to native Hawaiians as a result of acts committed by representatives of the United States or those acting in concert with them at some previous time. The issue here is whether the United States is under a legally enforceable statutory duty to act as suggested by the plaintiffs. It should be noted this court has previously recognized the United States' moral obligation to native Hawaiians.

ment is within the complete discretion of the United States Department of Justice. The Admission Act states that if the "lands, proceeds and income" of the home lands program are managed for any purpose other than those set forth in § 5(f), "their use for any other object shall constitute a breach of trust for which suit *may* be brought by the United States." Admission Act § 5(f) (emphasis added). The clear language of the Act establishes that the United States is permitted, but not required, to bring enforcement actions.

Because the decision to bring suit for breach of trust is a discretionary one, mandamus cannot lie. *Wilbur v. United States*, 281 U.S. 206, 218–19, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930). Mandamus is "proper only to command an official to perform an act which is a positive command and so plainly prescribed as to be free from doubt." *Smith v. Grimm*, 534 F.2d 1346, 1352 (9th Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). There is no positive command in the Admission Act for the United States to bring a breach of trust action against the Commission or its members. Accordingly, the court DISMISSES plaintiffs' claims against the Department of Justice, William P. Barr, Attorney General, and the United States.

## II. STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT[3]

The state defendants raise numerous arguments in their motion for judgment on the pleadings or, in the alternative, for summary judgment. Because the court has accepted and considered matters outside the pleadings, it will treat the motion as one for summary judgment.

### A. *Subject Matter Jurisdiction*

■ The Ninth Circuit has expressly ruled that claims brought under the Commission Act are state law claims and do not give rise to federal court jurisdiction. *Keaukaha I,*

588 F.2d at 1226–27. That case also held that the Admission Act contains no implied cause of action by which a private plaintiff may seek to enforce the duties and obligations imposed by the Act. *Id.* at 1224. Section 5(f) of the Admission Act, however, does create a federal right enforceable under 42 U.S.C. § 1983. *Keaukaha–Panaewa Community Assoc. v. Hawaiian Homes Comm'n,* 739 F.2d 1467, 1472 (9th Cir.1984) *("Keaukaha II"); see also Price I,* 764 F.2d at 629.

■ This court, therefore, has jurisdiction over plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331(a). Additionally, the court, in its discretion, can assert pendent jurisdiction over any claims against the state defendants arising under the Commission Act that are not barred by the Eleventh Amendment. *Chandler v. McMinnville Sch. Dist.,* 978 F.2d 524, 531 (9th Cir.1992).

### B. *Standing*

■ The state defendants strenuously argue that plaintiffs lack standing. The Ninth Circuit, however, has repeatedly held that beneficiaries of the trust created by § 5(f) of the Admission Act, such as plaintiffs, "have standing to challenge the use of section 5(f) lands." *Price v. Hawaii,* 939 F.2d 702 (9th Cir.1991) *("Price III")* (citing *Price v. Akaka,* 928 F.2d 824, 826–27 (9th Cir.1990) *("Akaka "), cert. denied,* — U.S. —, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991); *Ulaleo v. Paty,* 902 F.2d 1395, 1397 (9th Cir.1990), *petition for cert. filed,* Dec. 28, 1992; *Price I,* 764 F.2d at 630).

### C. *Sovereign Immunity*

#### 1. *Claims against the State*

■ The State of Hawaii has not waived its sovereign immunity, and, thus, all plaintiffs' claims against the State or its agencies or departments are barred by the Eleventh Amendment. *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Price,* 764 F.2d at 629; *see also Price v. Hawaii,* 921 F.2d 950, 958 (9th Cir.1990)

---

**3.** The lessee defendants joined in the state defendants' motion. Because the court resolves the state defendants' motion on grounds applicable

only to the state defendants, the court does not address the lessee defendants' joinder.

**1488**

("*Price II*"); (holding state and its agencies have Eleventh Amendment immunity. "We have told them that before.... We have told others the same thing.... Nothing has changed."); *Price III*, 939 F.2d at 706 (same). Accordingly, the court GRANTS summary judgment in favor of the Hawaiian Homes Commission, the Department of Hawaiian Home Lands, and the State of Hawaii.

### 2. *Claims Against State Officials in their Official Capacities*

The plaintiffs have also named numerous state officials as defendants in this action, in both their official and individual capacities. To the extent defendants are sued in their official capacities, the Eleventh Amendment restricts the relief available to plaintiffs.

Initially, the Eleventh Amendment bars plaintiffs from bringing state law claims against state officials in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). Thus, to the extent plaintiffs seek redress for violations of the Hawaii constitution (*see* First Amended Complaint ¶ 9) or the Commission Act (*see id.* ¶¶ 1, 12(c), 19, 20, 21, 27(j)), these state law claims are barred by the Eleventh Amendment.[4] *Pennhurst*, 465 U.S. at 106, 104 S.Ct. at 911. Accordingly, the court GRANTS the state defendants' motion for summary judgment on all state law claims against Warren Price III and the Chairperson and members of the Hawaiian Homes Commission brought in their official capacities.

Additionally, the Eleventh Amendment bars plaintiffs from seeking retroactive relief from state officials even for violations of federal law. Thus, "the federal court may award an injunction that governs the official's future conduct," but may not award retrospective relief that merely remedies past violations. *Id.* at 102–03, 104 S.Ct. at 909; *Papasan*, 478 U.S. at 278, 106 S.Ct. at

2940; *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir.), *modified* (1992).

To determine whether the relief plaintiffs seek is prospective or retrospective, the court must look at the entire complaint. As the Ninth Circuit observed, "[s]imply asking for injunctive relief and not damages *does not* clear the path for a suit. The Supreme Court has recognized that the difference between retrospective and prospective relief 'will not in many instances be that between day and night.'" *Ulaleo*, 902 F.2d at 1399 (quoting *Edelman v. Jordan*, 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974)). Still, as a general proposition,

> [r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred [by the Eleventh Amendment]....

*Papasan*, 478 U.S. at 278, 106 S.Ct. at 2940.

In the instant case, plaintiffs have styled their amended complaint as one seeking damages and declaratory and injunctive relief. Yet all their allegations against the state officials look to remedy the *past* problem of authorizing TPAs with non-native Hawaiians. In *Pele Defense Fund v. Paty*, 73 Haw. 578, 601, 837 P.2d 1247 (1992), a breach of § 5(f) trust action, the Hawaii Supreme Court noted that "PDF is not seeking to prospectively enjoin a constitutional violation in this case, but would have us turn back the clock and examine actions already taken by the state. The doctrine of sovereign immunity deters judges from this course...." Several other cases have reviewed breach of trust claims such as plaintiffs' and likewise have found the claims purely retrospective.

In *Papasan*, the United States gave Mississippi land to be held in trust for the benefit of schoolchildren in specified areas. The state sold the land and invested the money in railroads within the state. Plaintiffs brought a breach of trust action seeking a declaration that the sale was void and seeking the establishment of a trust, of equal

---

4. Furthermore, the Commission Act cannot be enforced under 42 U.S.C. § 1983 because Commission Act claims assert only state rights, *Keaukaha I*, 588 F.2d at 1224–27, and a necessary element of a civil rights action is deprivation of *federal* rights. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.1991).

value to the land, to be held for plaintiffs' benefit. *Papasan,* 478 U.S. at 274–75, 106 S.Ct. at 2938. The Supreme Court held that a claim for relief from a past breach of trust is indistinguishable from a claim to satisfy continuing trust responsibilities and, thus, is barred by the Eleventh Amendment. *Id.* at 281, 106 S.Ct. at 2942.

In *Price III,* land had been granted to private parties to be used only as a sailor's home. If used for any other purpose, it was to revert to the government of Hawaii. The private owners sought, and received, court approval to change the use of the land due to the changes in the surrounding area. Plaintiffs, native Hawaiians, claimed that as soon as the lot was no longer used for a sailor's home, it reverted to the state to be held in trust for their benefit under § 5(f) of the Admission Act. Plaintiffs brought suit to have the private parties ejected from the lot and to have the State begin receiving income from the land to be used for trust purposes under § 5(f). *Price III,* 939 F.2d at 705. In affirming the District Court's finding of sovereign immunity, the Ninth Circuit held:

> The complaint seeks retrospective relief against the state officials. It seeks no prospective relief against them. To the extent that it is intended to be an action against them in their official capacities, it is … barred by the eleventh amendment, and the district court's dismissal was proper.

*Id.* at 706.

And in *Ulaleo,* the Hawaii Board of Land and Natural Resources exchanged certain land held in trust under § 5(f) of the Admission Act for approximately 2,000 acres less land owned by the Campbell Estate. Plaintiffs argued that the exchange constituted a breach of trust and that "the BLNR is obligated to recover the land to the benefit of the trust beneficiaries." *Ulaleo,* 902 F.2d at 1397. They additionally sought enforcement of "an appropriate procedure and consideration of the trust purposes before an exchange is made." *Id.* The court found plaintiffs' attempt to style their claim as one for prospective relief unconvincing.

> The complaint is that sometime in the past, the BLNR undertook an action, the land

exchange, which allegedly injured the plaintiffs by violating the trust of which the plaintiffs are beneficiaries. There is no allegation that the Board is continuing to violate its trust duties in other ways or that it is likely to do so in the future. The immediate relief plaintiffs seek would require the state to purchase the lands from its present holder by way of cash or other land. We hold that to grant the requested relief would be a retrospective remedy, as opposed to stopping an ongoing violation of federal law. If the trust duty was violated, it happened when the BLNR executed the exchange.

*Id.* at 1399–1400. The identical finding was made by the Hawaii Supreme Court when the action was brought in state court. *Pele Defense Fund,* 73 Haw. at 611, 837 P.2d 1247.

This case is indistinguishable from the above authorities. Plaintiffs' sole claim against the state officials is that the officials deprived them of their right to have the home lands managed solely for the benefit of native Hawaiians by approving the TPAs. As the Hawaii Supreme Court recently held, "to restore [the] trust beneficiaries to the position they occupied prior to the [alleged trust violation]" would require retrospective action by the court, which is prohibited by sovereign immunity. *Pele Defense Fund,* 73 Haw. at 614, 837 P.2d 1247. Furthermore, there is no allegation that the state officials are continuing to violate its trust duties or that they are likely to approve any TPAs in the future.

Accordingly, the court finds that plaintiffs seek only retrospective relief against the state officials. Thus, the court GRANTS the state defendants' motion for summary judgment on all claims against Warren Price III, Attorney General, and the Chairperson and members of the Hawaiian Homes Commission in their official capacities.

### 3. *Claims Against State Officials in their Individual Capacities*

██ All the state officials, with the exception of Attorney General Warren Price III, were also sued in their "individual capacities." As the Ninth Circuit noted, "the eleventh amendment does not bar a suit seeking

damages against a state official personally." *Pena,* 976 F.2d at 473; *Akaka,* 928 F.2d at 828.

To determine whether the defendants are sued in their personal capacities, the court must examine the specifics of the conduct involved and not merely look at the caption of the complaint. *Pena,* 976 F.2d at 474 (Nelson, J., concurring). It makes no difference to the determination that the complaint alleges the state "officials were performing their governmental duties when they committed the alleged wrongs." *Price III,* 939 F.2d at 706. As the Supreme Court recently stated, "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer v. Melo,* — U.S. —, —, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). But if, while acting under the "color of law," the officials exceed their scope of authority, act pursuant to an unconstitutional statute, or personally deprive the plaintiff of a federal right, the officials can be sued in their personal capacity. *Pena,* 976 F.2d at 474.

Here, plaintiffs allege that the state officials exceeded the scope of their authority by approving the TPAs with non-beneficiary third parties. They claim that this conduct deprived them of their federal right to have the home lands trust administered solely for the benefit of native Hawaiians. Thus, to the extent plaintiffs seek damages against the Chairperson and members of the Commission in their individual capacities, their claims are not barred by the Eleventh Amendment.

### D. *Qualified Immunity*

"An official sued in his personal capacity, although deprived of eleventh amendment immunity, may assert a defense of qualified immunity." *Pena,* 976 F.2d at 473 (citing *Hafer,* — U.S. at —, 112 S.Ct. at 362). The issue of qualified immunity in the context of the Commission and Admission Acts has been raised in this court numerous times. As the Ninth Circuit stated: "Officials performing discretionary functions, as were these officials, are entitled to qualified immunity if their conduct 'does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Price II,* 921 F.2d at 958 (affirming qualified immunity against claim that officials violated § 5(f) "when they allocated lands or funds to various state entities, failed to segregate assets, and were not prudent enough investors") (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

The policy rationale behind the test for qualified immunity is two-fold. First, as an element of fairness, public officials can only be expected to conform their behavior to standards that are well-defined. In *Todd v. United States,* 849 F.2d 365 (9th Cir.1988), the Ninth Circuit said:

> If the controlling law is not clearly established, a reasonable person would not be expected to know how to structure his conduct in order to avoid liability.

*Id.* at 368–69. Second, the public interest is served having officials who are able to take affirmative action without persistent fear of suit. Qualified immunity acts as a means to avoid deterring capable persons from accepting public office and encouraging action on pressing social issues. *Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736.

Aside from immunization from damages, an assertion of the affirmative defense of qualified immunity presents the legal question of whether a public official is entitled *not to be forced to stand trial for* actions taken in her official capacity. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). A motion for summary judgment on the issue of qualified immunity is of particular importance because of the peculiar costs—distraction from official duties, inhibition of discretionary action, and deterrence from public service— that attend forcing government officials to stand trial for their actions. *See e.g. Harlow,* 457 U.S. at 817, 102 S.Ct. at 2737.

Here, plaintiffs' claims against the state defendants arise out of their allegations that the TPAs violate the Commission Act, and thus, by approving them, the state officials violated their duty to administer the trust for plaintiffs' benefit. The Commission made a

discretionary decision to approve the challenged TPAs. In order to avoid a qualified immunity claim plaintiffs must show the law clearly established that the TPAs were illegal and that the Chairperson and members of the Commission had a duty to disapprove them. *Price III*, 939 F.2d at 707, *on remand*, Civ. No. 89–00561 HMF (D.Haw. May 12, 1992) (order granting summary judgment based on qualified immunity). Specifically, plaintiffs must show that:

> The contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted).

Plaintiffs simply have not overcome this difficult burden. They have not referred the court to any authority to indicate that the law at the time the TPAs were approved clearly established that they were illegal. To the contrary, prevailing opinion at the time was that TPAs were legal. There were numerous published Attorney General Opinions approving similar TPAs. *See, e.g.,* Haw. Att'y Gen.Op. No. 1168 at 544 (1924); Haw. Att'y Gen.Op. No. 55–20 (1955). Additionally, a decision of the Second Circuit Court of Hawaii upheld a third-party agreement as not being in violation of the Commission Act. *See Adolpho v. Kealoha*, Civ. No. 243, slip. op. (Haw. Nov. 25, 1960). Finally, neither Congress nor the Hawaii Legislature made any amendments prohibiting such TPAs despite having considered them and having made other amendments to the Commission Act. *See* State Defendants' Motion for Judgment on the Pleadings, Exh. 3.

While these rulings may be contested, or distinguished, or even overturned, there simply was not "clearly established law" prohibiting TPAs. Even if the TPAs were found unlawful today, *at the time the Commission approved them*, the law allowed such agreements or, at best, was ambiguous about whether such agreements were lawful. Accordingly, the court finds that the Chairperson and members of the Commission are entitled to qualified immunity as a matter of law and, therefore, GRANTS the state defendants' motion for summary judgment on all claims against them in their personal capacities.

### III. LESSEE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (FILED DECEMBER 8, 1992)

 Plaintiffs initially filed their complaint in this action on June 29, 1992. On August 19, 1992, the lessee defendants filed a motion to dismiss or, in the alternative, for more definite statement. After hearing, Magistrate Judge Barry M. Kurren found that dismissal with prejudice was "too harsh a remedy" at that stage of the proceedings, but ordered plaintiffs to file an amended complaint meeting certain requirements of specificity. *See* Order Granting Defendants Motion for More Definite Statement (filed October 19, 1992). Plaintiffs filed an amended complaint on November 13, 1992.

The lessee defendants again move for dismissal or, in the alternative, for summary judgment. In support of dismissal, they argue that, under Federal Rule of Civil Procedure 41(b), plaintiffs' amended complaint must be dismissed with prejudice "for failure of the plaintiff to comply with any order of court." Fed.R.Civ.P. 41(b). Additionally, they argue that even if the complaint is not subject to dismissal under Rule 41(b), it is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because the court finds that plaintiffs have failed to state a claim, the court does not address lessee defendants' arguments that plaintiffs violated Rule 41(b).[5]

---

5. Aside from his three paragraph response to lessee defendants' Rule 41(b) argument, plaintiffs' counsel's response to the Rule 12(b)(6) motion and motion for summary judgment, in its entirety, was: "Additionally, plaintiffs submit that there is no merit to Lessee defendants motion to dismiss or for summary judgment." *See* Plaintiffs' Response to Lessee Defendants' Motion to Dismiss at 4.

■ In a § 1983 action, plaintiffs must specifically allege: (1) defendants were acting under color of state law; (2) plaintiffs were deprived of rights, privileges, or immunities secured by the constitution or laws of the United States; and (3) defendants' conduct was the proximate cause of plaintiffs' deprivation of rights. *Crumpton*, 947 F.2d at 1420. Section 1983 does not create substantive rights; it is merely a means of seeking redress for deprivations of other federal rights. *Id.* Plaintiffs have failed to show either state action or deprivation of a federal right.

The mere fact that lessee defendants are lessees under the Hawaiian Homestead program does not mean that they act under "color of state law" for purposes of a civil rights claim. In *Price III*, the case involving land that ceased to be used as a sailor's home, the Ninth Circuit upheld the district court's dismissal of the civil rights action against the private parties for failure to state a claim that the private parties were acting under color of state law. *Price III*, 939 F.2d at 707. As stated above, the plaintiffs brought suit to have the private parties ejected from the lot and to have the State begin receiving income from the land to be used for trust purposes under § 5(f). In finding no state action, the court initially noted that "[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act." *Id.* at 708 (citations omitted). The court stated:

> Nothing in the complaint suggests that the private appellees have done anything that any other holder of fee title to the land would have done except, of course, the seeking of court approval before taking actions that might have possibly 'caused divestment of the property. None of this contains a whisper of a suggestion that these appellees have acted with the State in any sense whatsoever.

*Id.* at 707 (footnote omitted).

■ Likewise, in the instant case, there is no allegation that the lessee defendants are state actors.[6] Furthermore, there is absolutely nothing to suggest the lessee defendants did anything other than what any other lessee could have done—contracted with a third party. As in *Price III*, merely seeking state approval does not amount to state action:

> [T]he party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* at 708 (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982)).

Plaintiffs simply have failed to show that the lessee defendants acted together with the state defendants to deprive them of their rights. "A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of the underlying material facts." *Flanagan v. Shively*, 783 F.Supp. 922, 928–29 (M.D.Pa.), *aff'd*, 980 F.2d 722 (3d Cir.1992); *see also Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991) (a mere allegation of a civil rights conspiracy without factual specificity is insufficient to support a claim). As a matter of law, plaintiffs have failed to establish state action.

■ Alternatively, even were the court to find that plaintiffs could prove state action, plaintiffs fail to show they were deprived of rights, privileges, or immunities secured by the constitution or laws of the United States. Their complaint alleges defendants violated the Commission Act by entering into TPAs. First Amended Complaint ¶¶ 4(i), 11, 20. Because claims under the Commission Act arise under state law, this is insufficient to establish a federal civil rights claim. *Keaukaha I*, 588 F.2d at 1224–27. Similarly, the other claims against the lessee defendants all involve alleged breaches of state law. *See*

---

6. The court notes that plaintiffs' First Amended Complaint fails to make even the conclusory allegation that defendants acted "under color of state law." Even were the court to allow plaintiffs to amend the complaint a second time to make this allegation, it would not remedy the otherwise defective complaint.

First Amended Complaint ¶¶ 23, 24. There is not a *single* allegation in the amended complaint that the lessee defendants deprived plaintiffs of a *federal* right.

■ Plaintiffs additionally assert a cause of action against the lessee defendants under the Commission Act. Because the court has dismissed plaintiffs' federal claims against the lessee defendants, the court has no jurisdiction to entertain plaintiffs' state law claims. *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Accordingly, the court DISMISSES plaintiffs' action as to the lessee defendants. Because the court grants lessee defendants' motion to dismiss filed December 8, 1992, the court DENIES AS MOOT lessee defendants' motion to dismiss or, in the alternative, for stay of proceedings (filed January 11, 1993) and DENIES AS MOOT lessee defendants' motion to dismiss or, in the alternative, for summary judgment (filed January 11, 1993).

## CONCLUSION

The court fully recognizes the current plight of the plaintiffs who feel the purpose and spirit of the Commission Act is being violated by allowing homestead lessees to enter into TPAs with non-native Hawaiians. Yet the court is bound to follow the law. Although plaintiffs would like to have this court find the TPAs illegal, and hold the federal and state defendants liable for the harm these agreements allegedly have caused, this simply is not the appropriate forum under current law.[7]

For the reasons stated above, the court finds that plaintiffs' action must be dismissed. Accordingly, the court GRANTS the federal defendants' motion to dismiss; GRANTS the state defendants' motion for summary judgment; and GRANTS the lessee defendants' motion to dismiss.

IT IS SO ORDERED.

---

[7]. The Hawaii Supreme Court recently reaffirmed that native Hawaiians have standing and jurisdiction to bring claims, such as plaintiffs have brought here, in state court. *Pele Defense Fund*, 73 Haw. at 601–06, 837 P.2d 1247.