**Earl F. ARAKAKI, et al., Plaintiffs,**

v.

**Benjamin J. CAYETANO in his official capacity as Governor of the State of Hawaii, et al., Defendants.**

**Civil No. 02–00139 SOM/KSC.**

United States District Court,
D. Hawai'i.

May 8, 2002.

H. William Burgess, argued, Patrick W. Hanifin, argued, Im Hanifin Parsons, LLLC, Honolulu, HI, for Plaintiffs.

Gerard D. Lau, argued, State of Hawaii, Attorney General, Honolulu, HI, for Benjamin Cayetano, State Officials, Hawaiian Homes Commissioners.

Sherry P. Broder, argued, Honolulu, HI, for Trustees of the Office of Hawaiian Affairs.

Robert G. Klein, argued, McCorriston Miller Mukai MacKinnon, Honolulu, HI, for Defendant–Intervenor SCHHA.

*ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS ON STANDING GROUNDS; ORDER DENYING MOTION TO DISMISS (OR RECONSIDER PRIOR ORDER FINDING TAXPAYER STANDING) ON POLITICAL QUESTION GROUNDS*

MOLLWAY, District Judge.

## I. INTRODUCTION.

Plaintiffs, some of whom are of Hawaiian ancestry, seek to stop Defendants' provision of benefits to only persons of Hawaiian or native Hawaiian ancestry.[1] Plaintiffs identify themselves as individual taxpayers in Hawaii and beneficiaries of a public land trust.

Defendants have moved in three separate motions to dismiss this case. Defendants State of Hawaii ("State" or "Hawaii"), the Hawaiian Homes Commission ("HHC"), and the Department of Hawaiian Home Lands ("DHHL") have moved to dismiss based on an alleged lack of standing.[2] Defendant Office of Hawaiian Affairs ("OHA") has also moved to dismiss this action based on an alleged lack of standing. OHA additionally argues that this case should be dismissed (or alternatively that the court should reconsider its previous standing determination) because the case allegedly involves a nonjusticiable political question.

This court is bound by the Ninth Circuit's decision in *Hoohuli v. Ariyoshi*, 741 F.2d 1169 (9th Cir.1984). Applying *Hoohuli*, the court concludes that Plaintiffs have taxpayer standing to assert their Equal Protection claims. To the extent Plaintiffs assert claims that are not premised on actual expenditures of tax funds, however, those claims are dismissed.

Plaintiffs lack standing to assert claims as alleged beneficiaries of a public land trust created by the Admissions Act in 1959. Accordingly, the court dismisses Plaintiffs' breach of public land trust claims.

Because OHA has not here demonstrated that the claims against it should be dismissed as involving a nonjusticiable political question, the court denies OHA's motion to dismiss on that ground and declines to reconsider the court's previous denial of a request for a temporary restraining order.

---

1. The court uses the terms "Hawaiian" and "native Hawaiian" as defined in Haw.Rev. Stat. § 10–2. *See Arakaki v. Cayetano*, 198 F.Supp.2d 1165, 1172 n. 6 (D.Haw.2002).

2. As required by Hawaii law, Plaintiffs named as Defendants various state officials in their official capacities, rather than the agencies they head. The court treats those Defendants as being the State, DHHL, and OHA.

## II. FACTUAL BACKGROUND.

■ The factual background was set forth in this court's previous Order Denying Plaintiffs' Motion for Temporary Restraining Order. *Arakaki v. Cayetano*, 2002 WL 654084 (D.Haw., March 18, 2002).[3] That factual background is incorporated by reference.

## III. STANDARD OF REVIEW.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer subject matter jurisdiction on the court, or attack the existence of subject matter jurisdiction in fact. *Thornhill Publ'g Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Federation of African Amer. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from eval-

uating for itself the existence of subject matter jurisdiction in fact. *Thornhill*, 594 F.2d at 733. The present motions involve both facial and factual attacks.

Plaintiffs have the burden of proving that jurisdiction does in fact exist. *Thornhill*, 594 F.2d at 733. Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir.1996).

## IV. ANALYSIS.

### A. Plaintiffs Have Standing to Assert Some of Their Equal Protection Claims.

As the court noted in denying Plaintiffs' earlier motion for a TRO, Plaintiffs are claiming that the provision of benefits exclusively to Hawaiians and/or native Hawaiians by OHA, HHC, and DHHL violates the Equal Protection Clause of the Fourteenth Amendment. Defendants now move to dismiss these claims based on an alleged lack of standing.

#### 1. Plaintiffs Have State Taxpayer Standing.

■ Article III, section 2, of the Constitution confines federal courts to deciding

---

**3.** In the course of these proceedings, OHA has complained about Plaintiffs' occasional reliance on district court opinions that, unlike this court's order denying a temporary restraining order, are unpublished. OHA misunderstands the status of federal district court opinions. Citing to Ninth Circuit and Hawaii state cases, OHA argues that unpublished opinions should not be considered. Both the Ninth Circuit and Hawaii state courts have specific prohibitions preventing the citation of unpublished decisions. *See* 9th Cir. R. 36–3 (stating that unpublished decisions of the Ninth Circuit generally may not be cited); *Chun v. Board of Trs. of Employees' Ret. Sys. of Haw.*, 92 Hawai'i 432, 446, 992 P.2d 127, 141 (2000) (holding that an unpublished deci-

sion of a state trial court may not be cited). However, unlike the Ninth Circuit and Hawaii state courts, this court has not adopted any rule that prohibits the citation of unpublished decisions of this court. Therefore, in this district, an unpublished federal district court decision has no more and no less force and effect than a published federal district court decision. No district court opinion, published or unpublished, constitutes precedent binding in any other case on any judge; that is, other district judges may freely differ with any district judge's opinion, published or unpublished. However, in the absence of any rule, practice, or order to the contrary, any district court opinion, published or unpublished, may be cited for persuasive purposes.

cases or controversies. A plaintiff in a federal case must show that an actual controversy exists at all stages of the case. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 63, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). No case or controversy exists if a plaintiff lacks standing to make the claims asserted. *See White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000) (stating that standing pertains to a federal court's subject matter jurisdiction).

■ Plaintiffs must demonstrate: 1) an injury in fact—an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, not conjectural or hypothetical; 2) a causal relationship between the injury and the challenged conduct—an injury that is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and 3) a likelihood, not mere speculation, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1126 (9th Cir.1996).

Plaintiffs argue that they have been injured as Hawaii taxpayers. They claim to have state taxpayer standing to bring Equal Protection claims.[4] Historically, taxpayers of a municipality were allowed to maintain an action against a city to enjoin the illegal use of the municipality's money. *See Frothingham v. Mellon,* 262 U.S. 447, 486, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). *Frothingham* noted that municipal taxpayers were allowed to maintain these suits because their interests in the expenditure of municipal funds was "direct and immediate." *Id.* The Court has treated federal taxpayers differently.

The interests of federal taxpayers in moneys of the United States treasury "is shared with millions of others" and "is comparatively minute and indeterminable." *Id.* at 487, 43 S.Ct. 597. As the expenditure of federal tax funds is more of a "public" than an "individual" concern, *Frothingham* concluded that, absent a "direct injury suffered or threatened," no case based on federal taxpayer standing may be maintained. *Id.* at 487–88, 43 S.Ct. 597. It is not enough that a federal taxpayer "suffers in some indefinite way in common with people generally." *Id.* at 488, 43 S.Ct. 597.

In *Flast v. Cohen,* 392 U.S. 83, 92, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the court noted that *Frothingham* had been "the source of some confusion." *Flast* attempted to end that confusion. Under *Flast,* whether an individual has federal taxpayer standing to maintain an action turns on whether the plaintiff "can demonstrate the necessary stake as taxpayers in

---

4. Plaintiffs do not allege discrimination that has caused injuries personal to them. They do not, for example, claim to have applied for benefits and have been turned down solely because they were not Hawaiian or native Hawaiian. Nor do Plaintiffs argue that they have taxpayer standing based on their payment of municipal or federal taxes. Plaintiffs attempt to show a direct injury through submission of supplemental declarations by Plaintiffs Patricia Carroll and Roger Grantham. The court disregards these as not timely filed. Even if the court considered these declarations, the matters raised are too speculative to demonstrate a direct injury. The essence of those declarations is that, if the State did not give money to OHA and DHHL, Carroll could have a better graduate education and Grantham's daughter could have air conditioning in her classroom. Plaintiffs have not established that, but for the funding going to OHA and DHHL, money would actually be spent on programs they identify. That is, there is no evidence that the State legislature would instead appropriate money relating to Carroll's graduate studies or install air conditioning in Grantham's daughter's classroom.

the outcome of the litigation to satisfy Article III requirements." *Id. Flast* stated:

> The nexus demanded of federal taxpayers has two aspects to it. First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute.... Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. When both nexuses are established, the litigant will have shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party to invoke a federal court's jurisdiction.

*Flast*, 392 U.S. at 102–03, 88 S.Ct. 1942.

*Flast* stated that the Establishment Clause of the First Amendment specifically limits the taxing and spending power of Congress.[5] *Id.* at 105, 88 S.Ct. 1942. Accordingly, taxpayers asserting violations of the Establishment Clause satisfy the second prong of *Flast's* test.

The Court subsequently recognized that *Flast* created a "narrow exception" to the general rule against taxpayer standing established in *Frothingham. See Bowen v. Kendrick*, 487 U.S. 589, 618, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988). Some courts have gone further, interpreting *Flast* as applying "only to cases in which a federal taxpayer challenges a congressional appropriation ... that allegedly violates the Establishment Clause." *See, e.g., Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1399 (10th Cir.1992), *cert. denied*, 507 U.S. 949, 113 S.Ct. 1360, 122 L.Ed.2d 739 (1993).

■ This case is not premised on either municipal taxpayer or federal taxpayer standing. Instead, it is based on state taxpayer standing, which the Ninth Circuit treats more like municipal taxpayer standing than federal taxpayer standing. In the Ninth Circuit, a state taxpayer has standing to challenge a state statute when that taxpayer is able to show that he or she " 'has sustained or is immediately in danger of sustaining some direct injury as the result of [the challenged statute's] enforcement.' " *Cammack v. Waihee*, 932 F.2d 765, 769 (9th Cir.1991) (quoting *Doremus v. Board of Educ.*, 342 U.S. 429, 434, 72 S.Ct. 394, 96 L.Ed. 475 (1952)), *cert. denied*, 505 U.S. 1219, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992). A taxpayer who brings a "good-faith pocket book action" and demonstrates that the challenged statute involves the expenditure of state tax revenues has a "direct injury." *See Cammack*, 932 F.2d at 769. The taxpayer must allege that the "direct injury" is caused by the expenditure of tax dollars. In other words, the pleadings of a valid taxpayer suit must set forth the relationship between the taxpayer, tax dollars, and the allegedly illegal government activity.

---

**5.** The Court noted, however, that whether "the Constitution contains other specific limitations[,] can be determined only in the context of future cases." *Id.* at 105, 88 S.Ct. 1942.

*Cantrell v. City of Long Beach,* 241 F.3d 674, 683 (9th Cir.2001). However, the taxpayer need not prove that his or her tax burden will be lightened by the elimination of the questioned expenditure. *Cammack,* 932 F.2d at 769.

Under circumstances similar to those presented here, the Ninth Circuit found that plaintiffs had state taxpayer standing. In *Hoohuli v. Ariyoshi,* 741 F.2d 1169 (9th Cir.1984), both native Hawaiian and non-Hawaiian plaintiffs claimed state taxpayer standing to attack disbursements from Hawaii's General Fund to OHA. *Id.* at 1172 (noting that nine of the plaintiffs were native Hawaiian and that the two other plaintiffs were neither Hawaiian nor native Hawaiian). The plaintiffs complained that their state tax dollars were being spent on a program that disbursed benefits based on impermissible racial classifications. *Id.* at 1172. The plaintiffs asked the district court to enjoin the spending of tax monies from the state General Fund for the benefit of the alleged racial class of "Hawaiians." *Id.* For the most part, the Ninth Circuit found that this was sufficient to demonstrate a "good-faith pocketbook action" sufficient to give the plaintiffs taxpayer standing.[6] *Id.* at 1180–81. The Ninth Circuit therefore found that the plaintiffs had standing to challenge the appropriating, transferring, and spending of taxpayers' money from the General Fund of Hawaii's treasury. *Id.*

■ Plaintiffs argue that, in light of *ASARCO v. Kadish,* 490 U.S. 605, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989), *Hoohuli* has been effectively overruled. *See* State Defendants' Motion at 2. A plurality of the Court in *ASARCO* considered state taxpayers to be like federal taxpayers, who generally lack federal taxpayer standing. Writing for the plurality, Justice Kennedy concluded that state taxpayer standing required a showing of "direct injury, pecuniary or otherwise."[7] *Id.* at 613–14, 109 S.Ct. 2037. A "plurality opinion" is not binding on any court and does not overrule *Hoohuli. See Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 234 n. 7, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987) ("an affirmance by an equally divided Court is not entitled to precedential weight"); *Hertz v. Woodman,* 218 U.S. 205, 213–14, 30 S.Ct. 621, 54 L.Ed. 1001 (1910) ("Under the precedents of this court ..., an affirmance by an equally divided court is, as between the parties, a conclusive determination and adjudication of the matter adjudged; but the principles of law involved not having been agreed upon by a majority of the court sitting prevents the case from becoming an authority for the determination of other cases, either in this or in inferior courts"); *Jacobsen v. United States Postal Serv.,* 993 F.2d 649, 655 (9th Cir.1992) ("The Ninth Circuit has not taken pluralities as being controlling"). *Accord TranSouth Fin. Corp. v. Bell,* 149 F.3d 1292, 1297 (11th Cir.1998) ("plurality opinions of the Supreme Court do not bind this Court"). Moreover, since *ASARCO,* the Ninth Circuit has reaffirmed that *Hoohuli,* rather than Justice Kennedy's plurality opinion in *ASARCO,* is the "controlling circuit precedent." *See Cammack,* 932 F.2d at 770 n. 9.[8]

---

6. Because the Ninth Circuit could not tell from the record whether the native Hawaiian plaintiffs received benefits from OHA that exceeded any pocketbook injury they may have suffered, the Ninth Circuit declined to determine whether the native Hawaiian plaintiffs had taxpayer standing. *Id.* at 1181.

7. Justice Kennedy was joined by Justices Rehnquist, Stevens, and Scalia in Part II–B–1 of the opinion, the part of the opinion dealing with state taxpayer standing.

8. One Ninth Circuit panel suggested that it may have found the *ASARCO* plurality opinion persuasive. *See Bell v. Kellogg,* 922 F.2d 1418, 1423 (9th Cir.1991) (citing *ASARCO*

Plaintiffs allege that they pay Hawaii taxes. Complaint ¶ 9. They further allege that tax revenue of $7,154,969 was appropriated to DHHL for Fiscal Year 2001. Complaint ¶ 58(d). Without stating any particular amount in their Complaint, they further allege that tax revenues are appropriated to OHA. Complaint ¶ 62(b). Defendants concede that DHHL and OHA receive some tax revenues. Plaintiffs allege that these revenues are going to DHHL and OHA in violation of the Equal Protection Clause. Complaint ¶¶ 34, 58(d), 62(b). In *Hoohuli*, 741 F.2d at 1180, the Ninth Circuit found state taxpayer standing for plaintiffs who 1) alleged their status as taxpayers, 2) challenged the appropriating, transferring, and spending of tax money from the state's General Fund, and 3) alleged that their tax burden was increased to provide benefits to the racial class of Hawaiians. Defendants have not

demonstrated that *Hoohuli* is no longer the law governing this district. Nor do they succeed in distinguishing *Hoohuli* on its facts or otherwise, as *Hoohuli* involved nearly identical allegations. Therefore, this court, following that binding Ninth Circuit precedent, concludes that Plaintiffs have standing to seek to restrain the State's expenditures of tax revenues on HHC, DHHL, and/or OHA.

### 2. Plaintiffs Satisfy Prudential Standing Limitations for their Equal Protection Claims.

Defendants additionally argue that, even assuming Plaintiffs have state taxpayer standing in light of *Hoohuli*, the prudential aspect of standing warrants dismissal of this case.[9] *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464,

(without analysis) as standing for the proposition that the same constitutional standing principles used in federal taxpayer cases "apply to those suing in federal court as state taxpayers"). However, a different Ninth Circuit panel cautioned that *"Bell* should not be interpreted as altering the law of this circuit on state taxpayer standing." *Cammack*, 932 F.2d at 770 n. 9. In any event, *Bell* could not alter the holding in *Hoohuli* without an intervening Supreme Court decision or a decision en banc. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir.2001) ("the first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals"; when "a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court"); *Roundy v. Commissioner of Internal Revenue*, 122 F.3d 835, 837 (9th Cir.1997) ("A three-judge panel is bound by a prior judgment of this court unless the case is taken en banc and the prior decision is overruled").

Defendants additionally argue that state taxpayer standing under *Hoohuli* only survives in the Establishment Clause context, but Defendants cite no authority for that proposi-

tion. In the context of federal taxpayer standing, courts other than the Ninth Circuit have so restricted standing. *See Romer*, 963 F.2d at 1399. No Ninth Circuit opinion has expressly limited state taxpayer standing to Establishment Clause cases, although, since *ASARCO*, the Ninth Circuit has found taxpayer standing only in the context of Establishment Clause cases. In *Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir.2001), decided after *ASARCO*, the Ninth Circuit rejected state taxpayer standing in a non-Establishment Clause case. *Cantrell* was a case brought by birdwatchers who asserted state law claims of waste of government funds, improper public gifts, and misuse of tidelands trust assets. However, neither in that nor any other case has the Ninth Circuit expressly restricted state taxpayer standing to Establishment Clause cases.

9. Without prudential limits on standing, "courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth v. Seldin*, 422 U.S. 490, 499–500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)

468, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("this court has always required that a litigant have 'standing' to challenge the action.... The term 'standing' subsumes a blend of constitutional requirements and prudential considerations"); *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.*, 219 F.3d 895, 899 (9th Cir.2000) ("At the most general level, [the standing] inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise") (quotation omitted); *Estate of McKinney v. United States*, 71 F.3d 779, 782 (9th Cir.1995) ("Standing has both constitutional and prudential limitations"); *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1308 (9th Cir.1982) ("the Supreme Court has further limited standing, as a prudential matter, requiring that a party assert its own rights and interests not those of third parties").

■■■■■ At least three prudential limitations on standing have been recognized. First, a plaintiff generally must assert his or her own legal rights and interests, and cannot rest his or her claim to relief on the legal rights or interests of third parties. *Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. 752; *Warth v. Seldin*, 422 U.S. 490, 499–500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Second, a federal court is not the forum to hear a "generalized grievance" involving a request for adjudication of abstract questions of wide public significance that are "pervasively shared and most appropriately addressed in the representative branches." *Valley Forge*, 454 U.S. at 475, 102 S.Ct. 752; *Warth*, 422 U.S. at 499, 95 S.Ct. 2197. *Accord United States v. Hays*, 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Finally, the plaintiff's interest must be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). *Accord Valley Forge*, 454 U.S. at 475, 102 S.Ct. 752. Defendants argue that this case should be dismissed on prudential grounds because it involves only a "generalized grievance."

Although Plaintiffs certainly present grievances shared in large part by most of the citizens of Hawaii, *Hoohuli* militates against dismissal of Plaintiffs' Equal Protection claims on prudential grounds. The plaintiffs in *Hoohuli* were asserting claims nearly identical to those being asserted here. In *Hoohuli*, state taxpayers also sought to enjoin expenditures of tax funds on a program (OHA) that disbursed benefits based on an allegedly impermissible racial classification. Although prudential concerns were not discussed in *Hoohuli*, the recognition by the Ninth Circuit that some of the plaintiffs had standing indicates that the panel found no problem with the prudential limits on standing. Otherwise, the Ninth Circuit should have considered prudential limits, which are an aspect of standing that courts have an independent obligation to examine. *See Hays*, 515 U.S. at 742, 115 S.Ct. 2431 (stating that federal courts are under an independent obligation to examine their own jurisdiction, which includes a plaintiff's standing). Defendants cite no authority establishing that this independent obligation somehow excludes prudential limitations. Just as the Ninth Circuit did not dismiss the plaintiffs' claims in *Hoohuli* on prudential grounds, Plaintiffs' claims in this case should not be dismissed on prudential grounds.

3. *Plaintiffs' Taxpayer Standing is Limited to Claims that Challenge Direct Expenditures of Tax Money.*

■■■■■ Although Plaintiffs have taxpayer standing, that standing only supports some

of their Equal Protection claims. Plaintiffs only have taxpayer standing to challenge direct expenditures of tax money by the legislature. Plaintiffs do not have standing to challenge disbursement of money from Hawaii's General Fund when the money does not come from state taxes. *See Cantrell,* 241 F.3d at 683; *Hoohuli,* 741 F.2d at 1180–81. For instance, Plaintiffs appear to challenge OHA's receipt of revenue from Ceded Land rentals first paid into Hawaii's General Fund and thereafter paid out to OHA. However, such an administrative "pass-through" does not transform rent revenues into tax revenues. Thus, Plaintiffs' taxpayer standing does not allow them to challenge that "pass-through." The "pass-through" does not give rise to a pocketbook action, as Plaintiffs are not taxed to raise that rental income. Nor is the court persuaded by Plaintiffs' argument that their taxes have been indirectly raised because, if the rent revenue from the Ceded Lands were used for other purposes, Plaintiffs would be taxed less for other purposes. This argument is not only speculative, it ignores established law requiring a "direct injury." *See Cammack,* 932 F.2d at 769 (citing *Doremus,* 342 U.S. at 434, 72 S.Ct. 394). Plaintiffs cite no authority supporting this argument.

■ Plaintiffs similarly lack standing to challenge the State's payment of $30

million to the Hawaiian Home Lands Trust. That amount is being paid over time, in satisfaction of a decision by the Hawaii legislature to settle past claims relating to matters administered by DHHL. *See* Session Laws of Haw., Act 14 (Reg.Sess.1995) (establishing the Hawaiian Home Lands Trust Fund of $30,000,000 for the purpose of settling all claims against Hawaii in connection with the management, administration, supervision of, or disposition by Hawaii of the Hawaiian Home Lands). The settlement of past claims is not an improper purpose that Plaintiffs have taxpayer standing to assert.[10] If a taxpayer could challenge every settlement, a state could never resolve any dispute by agreement and could be forced to litigate all disputes. This particular settlement is being paid in installments, but there is no authority allowing a taxpayer to undermine a settlement just because some installments have yet to be paid. Parties rely on settlements, change their positions based on them, and refrain from other action as a result. Taxpayer standing does not provide an avenue for nullifying a settlement reached years earlier. If it did, no state could ever defer settlement payments by agreement, or agree to any resolution involving the passage of time.

■ For the same reason, Plaintiffs lack standing to challenge the State's issu-

---

**10.** Here, Plaintiffs argue that the settlement was for illegal claims. They contend that they therefore should be allowed to contest these claims. This argument is unpersuasive. Take, for example, a State employee who sues the State on the ground that a person of his race was entitled to a preference in promotions. Suppose the State decided to settle the claim by agreeing to promote the employee and paying him an extra $100 per pay period for the next twenty years. Under Plaintiffs' argument, Plaintiffs would be entitled to come into this court to challenge that settlement in any of the years following the settlement, based on taxpayer standing. Plaintiffs would argue that the settlement supports a racial preference, which is improper. But the payment was to settle a claim, regardless of the merits of the claim. To allow Plaintiffs to challenge the settlement in this manner would be tantamount to having the court review the wisdom, at any time, of every legislative decision, regardless of when made, to settle a case rather than to litigate it. While such intrusions may be warranted when standing is asserted on other grounds, Plaintiffs offer no authority that taxpayer standing goes that far.

ance of bonds or other borrowing of money from the HHC, the DHHL, or OHA. Plaintiffs have not demonstrated that these acts involve the expenditure of tax funds on an improper purpose.[11]

### B. *Plaintiffs' Claims as Alleged Trust Beneficiaries are Dismissed.*

Plaintiffs claim that, as beneficiaries of a public land trust, they have standing to assert breaches of that trust. At the hearing on their motion for temporary restraining order, Plaintiffs explained that the land trust they were referring to had been created by the 1898 Newlands Resolution for the benefit of all of the inhabitants of Hawaii. *See* Argument by Plaintiffs in March 12, 2002, Hearing on Plaintiffs' Motion for Temporary Restraining Order (responding affirmatively to a question by the court as to whether Plaintiffs were attacking the alleged 1898 trust); Opposition to Motion to Dismiss (filed April 11, 2002) at 11 (arguing that the United States breached the alleged 1898 Trust in 1920, when the Hawaiian Homes Commission Act was enacted); Complaint ¶¶ 28 (alleging that the United States violated its fiduciary duty under the public land trust when it enacted the Hawaiian Homes Commission Act).[12]

Plaintiffs now change their position. In opposing the motions to dismiss, they argue that they are not attacking the 1898 trust, but instead are seeking to invalidate portions of the trust existing today, the one created in 1959 by section 5(f) of the Admissions Act.[13] *See* Argument by Plaintiffs on Present Motions (responding to questions by the court regarding which trust had allegedly been breached and unequivocally indicating that Plaintiffs' status as beneficiaries arises only from the public land trust as it exists today). Plaintiffs clarified that they are only seeking to invalidate that portion of the public land trust created by section 5(f) of the Admissions Act that pertains to the betterment of the conditions of native Hawaiians. Given their current position, the court deems Plaintiffs' public land trust claims to be limited to challenges to the trust created by the Admissions Act in 1959, i.e., the trust that exists today. All other public land trust claims alleged in the Complaint are deemed abandoned by Plaintiffs and are no longer part of this action.

Hawaii agreed to adopt the Admissions Act as part of its constitution when Hawaii became a state in 1959. *See* P.L. 86–3 (March 18, 1959), *reprinted in* 73 Stat. 4; Haw. Const. art. XII, §§ 2–3. In the Admissions Act, the United States granted Hawaii title to all public lands and public property within Hawaii, except for lands that the federal government retained for its own use. P.L. 86–3, § 5(b), 73 Stat. at 5. The public lands granted to Hawaii, as well as the proceeds and income therefrom, became lands held by Hawaii "as a

---

11. There may, of course, be bases other than taxpayer status through which allegedly wrongful expenditures or actions may be challenged. A person who is a direct victim of racial discrimination has such a different basis. Plaintiffs, however, have chosen to assert taxpayer standing, and Plaintiffs do not show that the narrow taxpayer basis encompasses all the challenges they bring.

12. Plaintiffs also alleged that the 1898 trust was breached when Congress enacted the Admissions Act in 1959. *See* Complaint ¶ 30.

13. Plaintiffs restated their position in apparent response to this court's order denying the motion for temporary restraining order, or to the court's concerns that Plaintiffs, not having established that they were inhabitants of Hawaii in 1920, when the United States allegedly breached the 1898 trust, may not be aggrieved beneficiaries of the 1898 trust.

public trust." Haw. Const. art. XII, § 4; *Rice v. Cayetano,* 528 U.S. 495, 507–08, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000).

The "public trust" created by the Admissions Act requires that the trust be used for one or more of the following:

[1] for the support of the public schools and other public educational institutions, [2] for the betterment of the conditions of native Hawaiians, as defined in the Hawaiian Homes Commission Act, 1920, as amended, [3] for the development of farm and home ownership on as widespread a basis as possible[,][4] for the making of public improvements, and [5] for the provision of lands for public use.

P.L. 86–3, § 5(f), 73 Stat. at 6. It is the second purpose that Plaintiffs challenge. Plaintiffs argue that, as beneficiaries of the section 5(f) public land trust, they may seek to enjoin the State Defendants and OHA from enforcing the trust's explicit purpose of bettering the conditions of native Hawaiians, which Plaintiffs allege is an unconstitutional purpose.[14]

■ Although Plaintiffs claim trust beneficiary standing to bring claims for breach of the public land trust created by the Admissions Act, that legislation does not itself provide a private cause of action. *Price v. Hawaii,* 764 F.2d 623, 631 (9th Cir.1985) (*"Price I "*), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986); *Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Commn.,* 588 F.2d 1216, 1220 (9th Cir.) (as amended)

("We hold that the Admission Act does not provide a private right of action") (*"Keaukaha–Panaewa I "*), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979). Any action to enforce section 5(f) of the Admissions Act may instead be brought under 42 U.S.C. § 1983.[15] *Price I,* 764 F.2d at 628; *Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Commn.,* 739 F.2d 1467, 1472 (9th Cir. 1984) (*"Keaukaha–Panaewa II "*). Accord *Price v. Hawaii,* 939 F.2d 702, 706 (9th Cir.1991) ("although section 5(f) itself does not provide a private right of action, an action under 42 U.S.C. § 1983 is proper") (*"Price IV "*),[16] *cert. denied,* 503 U.S. 938, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992); *Ulaleo v. Paty,* 902 F.2d 1395, 1397 (9th Cir.1990).

■ Accordingly, the Ninth Circuit has held that beneficiaries of the section 5(f) trust have standing to bring a § 1983 action against the trustees of that trust for breach of the trust. In *Price v. Akaka,* 3 F.3d 1220, 1224–25 (9th Cir.1993) (*"Price V "*), *cert. denied,* 511 U.S. 1070, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994), native Hawaiian plaintiffs challenged a referendum that would have extended benefits available under section 5(f) to all people of Hawaiian ancestry, rather than to only native Hawaiians. Because the native Hawaiian plaintiffs in *Price V* were among the class of section 5(f) beneficiaries whose welfare was at issue, the Ninth Circuit determined that they had standing to bring their § 1983 claim. *Id.* In so hold-

---

**14.** Defendants have not disputed Plaintiffs' assertion that they are beneficiaries of the public land trust created by section 5(f) of the Admissions Act. Therefore, for purposes of this motion, the court takes that assertion as true.

**15.** "Section 1983 imposes two essential proof requirements upon a claimant: 1) that a person acting under color of state law committed the conduct at issue, and 2) that the conduct

deprived the claimant of some right, privilege or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy,* 844 F.2d 628, 632–33 (9th Cir.1988).

**16.** The Ninth Circuit had ruled in several earlier matters involving Price. *See Price v. Hawaii,* 921 F.2d 950 (9th Cir.1990) (*"Price II "*); *Price v. Akaka,* 928 F.2d 824 (9th Cir. 1990) (*"Price III "*), *cert. denied,* 502 U.S. 967, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991).

ing, the Ninth Circuit recognized that beneficiaries of such a trust "have the right to 'maintain a suit (a) to compel the trustee to perform his duties as trustee; (b) to enjoin the trustee from committing a breach of trust; [and] (c) to compel the trustee to redress a breach of trust.'" *Id.* at 1224 (citing Restatement (Second) of Trusts, § 199). In *Price V,* the Ninth Circuit therefore allowed the native Hawaiian plaintiffs to maintain a § 1983 claim against the trustees (the persons acting under color of state law) for breach of section 5(f) of the Admissions Act (a federal statutory right).

The Ninth Circuit had previously allowed the native Hawaiian plaintiffs in *Price I* to maintain a cause of action against the governor of Hawaii to compel him to spend section 5(f) trust money for the betterment of the conditions of native Hawaiians. *See Price I,* 764 F.2d at 629–30. Although it is not clear from the Ninth Circuit's opinion in *Price I* whether the plaintiffs had expressly invoked § 1983, the Ninth Circuit treated the action as based on § 1983. Immediately after noting that section 5(f) created a federal right enforceable under § 1983, the Ninth Circuit said that the plaintiffs had "properly invoked federal question jurisdiction." *Id.* at 628.

In *Price III,* the Ninth Circuit found that native Hawaiian plaintiffs had standing to assert § 1983 claims based on the section 5(f) trustees' alleged commingling of trust funds, the trustees' failure to expend those funds for the benefit of native Hawaiians, and the trustees' use of those funds for purposes other than those listed in section 5(f). *Price III,* 928 F.2d at 826–28. In *Price IV,* the Ninth Circuit similarly found standing for native Hawaiian plaintiffs to assert § 1983 claims against state officials, who, through their alleged

inaction, had allowed an improper diversion of section 5(f) trust property. *Price IV,* 939 F.2d at 705–06. Again, the plaintiffs in *Price III* and *Price IV* were asserting that the trustees, state officials acting under color of law, were violating the plaintiffs' federal statutory rights under section 5(f) of the Admissions Act.

Here, unlike in the various *Price* cases, Plaintiffs are not alleging an actual breach of the trust created by section 5(f), as their claims do not involve any deviation from the terms of the section 5(f) trust. *See Price V,* 3 F.3d at 1224. Instead, Plaintiffs want this court to declare unconstitutional one of the stated purposes in section 5(f), that is, the purpose of bettering the conditions of native Hawaiians. Plaintiffs are not asserting a breach of trust, as were the claimants in the Ninth Circuit cases recognizing standing for beneficiaries of the section 5(f) trust to assert § 1983 claims for breaches of that trust.

Trust beneficiary status has no bearing on Plaintiffs' claims. Trust beneficiaries have standing to allege a breach of trust, but that is not what Plaintiffs are alleging. Instead, as "inhabitants" of Hawaii, Plaintiffs are demanding that the State ignore an express trust purpose, which Plaintiffs say violates the Equal Protection Clause. Allowing such a challenge, however, would make a nullity of standing requirements. *See Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130 (to have standing a plaintiff must show an injury in fact, a causal relationship between the injury and the challenged conduct, and a likelihood that a favorable decision will redress the alleged injury).

■ Plaintiffs' "breach of the public land trust" claims are nothing more than a "generalized grievance" under the Equal Protection Clause for which Plaintiffs lack

standing.[17] *See Hays,* 515 U.S. at 743, 115 S.Ct. 2431 (the "rule against generalized grievances applies with as much force in the equal protection context as in any other"); *Warth,* 422 U.S. at 499, 95 S.Ct. 2197. The Supreme Court "has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright,* 468 U.S. 737, 754, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

> *Allen v. Wright* made it clear that[,] even if a governmental actor is discriminating on the basis of race, the resulting injury "accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct." 468 U.S., at 755, 104 S.Ct. 3315 ... (quoting *Heckler v. Mathews,* 465 U.S. 728, 740, 104 S.Ct. 1387, 79 L.Ed.2d 646 ... (1984)).

*Hays,* 515 U.S. at 743–44, 115 S.Ct. 2431.

If Plaintiffs had been personally denied equal treatment, they would, of course, have standing to complain. But they are not proceeding on the basis of any direct injury. Instead, it is in their trust beneficiary capacities that they claim they are being treated differently from the small class of native Hawaiians. The Supreme Court has disapproved of finding standing under similar circumstances. *See Valley Forge,* 454 U.S. at 489–90 n. 26, 102 S.Ct. 752 (disapproving of standing to challenge affirmative action programs on the basis of a personal right to a government that does not deny equal protection of the laws).

Accordingly, the court dismisses Plaintiffs' breach of the public land trust claims.

C.  *OHA Has Not Established on This Motion that the Political Question Doctrine Justifies Dismissal of Plaintiffs' Claims or Reconsideration of this Court's Order Denying Plaintiffs' Request for a Temporary Restraining Order.*

OHA additionally argues that this court should dismiss this action as involving a nonjusticiable political question. This court may dismiss an action on the ground that it involves a nonjusticiable political question when one of the following is "inextricable from the case:"

> a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).[18]

The gist of the claims in the Complaint is that the benefits provided by OHA and HHC/DHHL are race-based, that those

---

**17.** Plaintiffs' public land trust claims are more generalized than their taxpayer standing claims. The public land trust claims involve nearly everyone in Hawaii (with the exception of the native Hawaiians actually receiving the section 5(f) benefits). Almost anyone here in Hawaii could conceivably bring these claims. By contrast, the taxpayer claims are limited to the class of persons actually paying state tax-

es. Accordingly, *Hoohuli,* in which the Ninth Circuit did not dismiss taxpayer claims on prudential grounds, is distinguishable.

**18.** The court's consideration of OHA's political question motion overlaps the court's earlier review of prudential standing. Standing "focuses on the party seeking to get his complaint before a federal court and not on the

benefits should therefore be analyzed under the Equal Protection Clause to see whether they pass "strict scrutiny,"[19] and that the benefits should be stopped because they are not "narrowly tailored to further a compelling governmental interest." *See Shaw v. Reno,* 509 U.S. 630, 643, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). Plaintiffs argue that the restriction of benefits to Hawaiians and native Hawaiians is "presumptively invalid and can be upheld only upon an extraordinary justification." *See id.* at 643–44, 113 S.Ct. 2816.

Although most race-based preferences are subject to "strict scrutiny," preferences given to American Indian tribes are reviewed under the "rational basis" standard. *See Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). Defendants contend that this court should dismiss this action as involving a nonjusticiable political question because, in order to decide whether to apply the "strict scrutiny" or "rational basis" test, the court must decide what Defendants call the political question of whether Hawaiians and native Hawaiians are an "Indian tribe."

However, in the next breath, Defendants cite numerous cases that they say stand for the proposition that this court may apply a "rational basis" test without finding that Hawaiians and native Hawaiians are actually an "Indian tribe." *See* Office of Hawaiian Affairs Defendants' Supplemental Memorandum in Response to Questions Raised by the Court at the April 29, 2002 Hearing (filed April 29, 2002). For example, in *Alaska Chapter, Assoc. Gen. Contractors of Amer., Inc. v. Pierce,* 694 F.2d 1162 (9th Cir.1982), the Ninth Circuit applied the *Morton* analysis to benefits being provided to the indigenous people of Alaska. At the time *Pierce* was decided, those indigenous people had not been recognized by the Bureau of Indian Affairs as being "Indian tribes." *See* Bureau of Indian Affairs, Indian Tribal Entities That Have a Government to Government Relationship With the United States, 46 Fed. Regis. 35360 (1981). Nevertheless, *Pierce* applied the *Morton* analysis broadly, employing a rational basis test to benefits being provided to "any person recognized as being an Indian or Alaskan Native by a

---

issues he wishes to have adjudicated." *Valley Forge,* 454 U.S. at 484, 102 S.Ct. 752 (quoting *Flast,* 392 U.S. at 99, 88 S.Ct. 1942). By contrast, the political question doctrine examines whether "a particular question is beyond judicial competence, no matter who raises it." 13A Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 3534 at 453 (2d ed.1984). However, both the political question doctrine and the "generalized grievance" limitation on prudential standing are based, at least in part, on the notion that another branch of government would be more appropriate to hear the grievance. A party lacks prudential standing to bring a "generalized grievance" involving a request for adjudication of abstract questions of wide public significance that are "pervasively shared and most appropriately addressed in the representative branches." *Valley Forge,* 454 U.S. at 475, 102 S.Ct. 752; *Warth,* 422 U.S. at 499, 95 S.Ct. 2197. Under the political question doctrine, courts examine whether a particular question or issue is beyond their competence based on separation of powers concerns. *See Federal Practice & Procedure* § 3534 at 453.

**19.** The Equal Protection Clause provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. On of its central purposes is to prevent the states from purposefully discriminating among individuals on the basis of race. *Shaw v. Reno,* 509 U.S. 630, 642, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). Governmental action can run afoul of the Equal Protection Clause when the government explicitly classifies or distinguishes among persons by reference to impermissible criteria such as race, sex, religion, or ancestry. *De La Cruz v. Tormey,* 582 F.2d 45, 49 (9th Cir.1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979).

tribe, the Government, or any state." *Pierce*, 694 F.2d at 1168 n. 8. *Pierce* reasoned that, although the history of "Alaskan Natives" with the United States was different from that of "American Indians," the *Morton* analysis nevertheless applied because "Alaskan Natives" "have been considered to have the same status as other federally recognized American Indians." "Alaskan Natives" were "under the guardianship of the federal government and entitled to the benefits of the special relationship." *Id.* n. 10, 94 S.Ct. 2474.

■■■ *Pierce* indicates that a court may decide the applicability of the *Morton* analysis without deciding the alleged political question of whether a group is an "Indian tribe." Accordingly, OHA has not met its burden of demonstrating that a nonjusticiable political question requires dismissal of this action. The court is not here deciding that it will apply a "rational basis" test. The court recognizes that Plaintiffs are arguing that *Pierce* has been called into doubt by *Rice v. Cayetano*, 528 U.S. 495, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000). However, OHA's present motion is a motion to dismiss based on nonjusticiability; this motion does not require the court to determine what test it will apply if it examines the merits of Plaintiffs' claims.[20] On OHA's nonjusticiability motion, the court instead rests its decision on OHA's failure to meet its burden of establishing that Plaintiffs present a nonjusticiable question requiring dismissal.

D. *Plaintiffs May Not Pursue Claims Challenging Real Property Tax Exemptions.*

■■■ In Paragraph 62(c) of the Complaint, Plaintiffs argue that they are harmed as taxpayers by the exemption from real property taxes given to Hawaiian Home Lands lots. Plaintiffs allege that the City & County of Honolulu and the County of Maui exempt Hawaiian Homesteads from real property taxes. *Id.* Although Plaintiffs claim that these exemptions are improper, Plaintiffs have not included the counties, the entities responsible for the real property taxes, as defendants in this case. OHA therefore moves to dismiss the real property tax claims, arguing that, under Fed.R.Civ.P. 19, the counties (the entities collecting real property taxes) are necessary parties to this case. The court need not reach this issue, however, as the remaining claims in this action are based solely on state taxpayer standing, and Plaintiffs have not alleged that their state taxes have been increased because of the real property tax exemption. Accordingly, Plaintiffs may not pursue real property tax claims.

V. *CONCLUSION.*

For the foregoing reasons, the court grants in part and denies in part Defendants' motions to dismiss for lack of standing. Except for Plaintiffs' claims based on state taxpayer standing that challenge direct expenditures of tax funds, Plaintiffs' Equal Protection claims are dismissed. All breach of public land trust claims are dismissed.

The court denies OHA's motion to dismiss (or to reconsider the finding of state taxpayer standing) based on an alleged political question. The court also denies OHA's motion to dismiss Plaintiffs' real

---

**20.** The court is well aware that legislation is pending before Congress that, if passed, may well affect any consideration of the merits. Congress might, for example, recognize Hawaiians and/or native Hawaiians as an "Indi-

an tribe." Additionally, Congress might recognize OHA (or some entity not associated with the State) as the body governing that "Indian tribe."

property tax claims for failure to join the counties, as those claims are dismissed for lack of standing.

IT IS SO ORDERED.